# Richmond.

. NYE v. LOVITT AND ANOTHER.

MARCH 26, 1896.

1. DEEDS—*Construction of—Technical Words—Heirs of the Body.*—Technical words are presumed to have been used technically, unless the contrary appears on the face of the instrument; and words of definite legal signification are to be understood as used in their definite legal sense. Applying these rules to the case at bar, the grant to " Jane C. Lovitt, for and during her natural life, and at her death then to the heirs of her body and their heirs forever," gave to the heirs of the body of Jane C. Lovitt a contingent remainder in the lands conveyed, and the persons answering the description of " heirs of her body " at the time of her death took a fee simple estate. There is nothing in the deed to require the words " heirs of her body " to be given other than their technical and ordinary meaning.

2. DEEDS—*Construction—Looking to the Deeds.*—In construing one deed, another deed from the same grantor to a different grantee, and in reference to a different subject-matter, cannot be looked to in order to ascertain the meaning of the grantor in the first deed.

3. ESTOPPEL—*After-Acquired Title—Married Women Uniting with Trustee to Convey Equitable Separate Estate.*—A grantor of land who has conveyed with a warranty or covenant of title is estopped from setting up an after-acquired title against his grantee, and, although there is no warranty, the grantor will be estopped from asserting an after-acquired title against his vendee where the deed of conveyance recites or affirms that the grantor is seised of a particular estate which the deed purports to convey and upon the faith of which the sale was made. But this doctrine does not apply to a married woman holding an equitable separate estate, who unites with her trustee merely for the purpose of showing that the trustee was making the conveyance with her knowledge and by her direction, and who makes no warranty or other covenant of title, nor any averment or affirmation that she was seised of or entitled to a particular estate in the land which the deed purports to convey.

4. EJECTMENT—*Plaintiff's Title—Co-Tenants—Extent of Recovery.*—A plaintiff in an action of ejectment can only recover that to which he hath the legal title. He cannot recover the share of his co-tenant or coparcener. If an ineffectual partition has been made, each joint tenant is still seised of his individual share of the whole, and cannot recover more in an action of ejectment.

Error to a judgment of the Corporation Court of the city of Norfolk, rendered October 10, 1893.

*Reversed.*

This was an action of ejectment instituted in the Corporation Court of the city of Norfolk by Mary C. Lovitt and Hattie C. Lovitt against David B. Nye, the plaintiff in error, to recover a lot in Brambleton Ward, in the city of Norfolk. Pending the action Mary C. Lovitt died intestate, and the action was revived in the names of Mary D. Lovitt and Hattie C. Lovitt (her mother and sister), her heirs at law.

The opinion states the case.

*Harmanson & Heath* and *Staples & Munford,* for the plaintiff in error.

*Tunstall & Thom,* for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

The first question to be determined in this case is the proper construction of the deed upon which the defendants in error base their right to recover the land in controversy, and of which the following is a copy:

"Whereas I, George Bramble, of the county of Norfolk, in the State of Virginia, having resided in the family of Wilson H. C. and Jane C. Lovitt for some years, and the said

Jane C. Lovitt being my relative, and desiring specially to provide for her and her children, it is my intention herein to give to the said Jane C. Lovitt, wife of the said Wilson H. C. Lovitt, and to the heirs of her body, a tract of land hereinafter to be described, the same to take effect immediately upon my death; that is to say, the property and estate in and to the said tract of land are reserved, and are to continue to reside and be in me, by me to own, use, and control for and during my natural life, and at my death, and instantly thereupon, the said tract of land, and the title thereto, are to pass to and become the property of the said Jane C. Lovitt, to be held and enjoyed by her during her natural life, and after her death the same are to pass to and become the property and estate of the heirs of her body and of their heirs forever. And the said tract of land lies in Norfolk county, on the Eastern Branch of the Elizabeth river; contains, by rough estimation, —— acres, and is embraced within the following metes and bounds:     *     *     *

" Now, for and —— consideration of the natural love and affection which I have for the said Jane C. Lovitt and for her said heirs, and for the further consideration of one dollar to me in hand paid by the said Jane C. Lovitt, the receipt of which is hereby admitted, I, the said George Bramble, do hereby make my deed, and thereby give, grant, and convey unto the said Jane C. Lovitt, for and during her natural life, and at her death then to the heirs of her body and to their heirs forever—subject, however, to my life estate therein heretofore carved out and reserved—all the right, title, interest, and estate which I have, may or shall have, in and to the tract of land above mentioned and described, with all the rights, ways, privileges, and appurtenances thereto pertaining or belonging. And I give, grant, and convey the said tract of land to the said parties, subject to my life estate therein, to be held, enjoyed, possessed, and owned by them as aforesaid, with general warranty.

" And to all of the above, and every part thereof, I have hereunto set my hand and affixed my seal the 7th day of January, 1865.

" GEORGE BRAMBLE, [Seal.]"

At the time the conveyance was made Mrs. Lovitt had three children, two sons, (aged respectively twenty-seven and twenty-five years) and a daughter (aged twenty-one years). One of the sons was then married and had one child, born in December, 1861. Before the mother died one of her sons (Robert Lovitt) died, leaving two children. So that she had two children living at the time of her death and two grand-children, as the heirs of her body.

During the lifetime of the mother the two sons purchased her life estate and partitioned the land between them. Robert sold his interest, and it passed by *mesne* conveyances to the plaintiff in error. To recover the land so conveyed the children of Robert Lovitt instituted their action of eject-ment against the plaintiff in error.

Their right to recover depends upon the question whether, by the conveyance of George Bramble, the remainder in the land passed to the *children* of Mrs. Lovitt or to *the heirs of her body.*

The granting clause in the deed is " to Jane C. Lovitt, for and during her natural life, and at her death then to the heirs of her body and their heirs forever."

Unless there be in the deed other expressions or provisions which clearly show that the grantor used the words " heirs of her body " in some other than their ordinary acceptation, and as descriptive of another class of objects, it is clear that the fee in the land, subject to Mrs. Lovitt's life estate, passed to the heirs of her body and not to her children ; for no rule is better settled than that technical words are presumed to be used technically, unless the contrary appears on the face of

the instrument, and that words of definite legal signification are to be understood as used in their definite legal sense. *Findley's Ex'or* v. *Findley*, 11 Gratt. 434; *Wallace* v. *Minor*, 86. Va. 550; 2 Minor's Inst. (4th ed.) 1066; 2 Jarm. Wills (5th Am. ed.), p. 382.

It is insisted, however, that there are expressions in the deed which show that the words " heirs of her body " were not used in their ordinary sense or acceptation, but that the grantor, in using them, meant the children of Mrs. Lovitt. The word " children " does appear in the preliminary part of the deed, where the grantor, in giving his reasons for making the conveyance, declared that he had resided for many years with Mrs. Lovitt and her husband, that he was related to her, and that he desired " specially to provide for her and her children."

The use of the word " children " in that part of the deed under consideration does not, under our decisions, indicate an intention on the part of the grantor to convey any part of the property to them as such, *in præsenti*, or in remainder. That he had no such intention is clearly shown, it seems to us, from the language which follows, in which he declares what was his intention.

In the same sentence, and immediately following his declaration that he desired " specially to provide for her and her children," he adds : " It is my intention herein to give to the said Jane C. Lovitt, wife of the said Wilson H. C. Lovitt, and to the heirs of her body," the property conveyed, subject to his life estate; " and at my death, and instantly thereupon, the said tract of land, and the title thereto, are to pass to and become the property of the said Jane C. Lovitt, to be held and enjoyed by her during her natural life, and after her death the same are to pass to and become the property and estate of the heirs of her body and of their heirs forever."

After thus declaring his intention to convey the property

to Mrs. Lovitt for her life, and after her death to the heirs of her body, in language too plain to be misunderstood or to need interpretation, he proceeds to carry out that intention by conveying the property in the following language: " I, the said George Bramble, do hereby make my deed, and thereby give, grant, and convey unto the said Jane C. Lovitt, for and during her natural life, and at her death then to the heirs of her body and their heirs forever," the property in the deed described, &c.

It is also insisted that the deed of January 14, 1865, by which the grantor in the deed of January 7, 1865, conveyed certain property to Jane E. Lovitt, daughter of Mrs. Lovitt, can be looked to in construing the deed of January 7, 1865. This we do not think can be done. The deeds are between different parties, and in reference to a different subject-matter.

The other words in the deed, and the circumstances surrounding the parties, relied on to show that the grantor, in using the words " heirs of her body," did not use them in their ordinary technical and legal sense, do not seem to require special notice. In a very doubtful case they might be of some value in determining the intention of the grantor ; but, as was said by Judge Joynes, in delivering the opinion of the court in *Rayfield* v. *Gaines*, 17 Gratt. 1, 6, " clear and unambiguous provisions, expressly made, cannot be controlled by mere inference and argument from general or ambiguous provisions of the will."

Being satisfied that it was the manifest intention of the grantor to convey the property to Mrs. Lovitt for and during her natural life, and then to the heirs of her body, we are relieved from the necessity of reviewing the great number of cases which were cited by counsel and relied on in argument, as all of them, it is believed, either affirm or admit that cardinal rule of construction, that the intention of the grantor,

as expressed in his deed, must prevail if it be lawful, and that the technical words used by him must receive their technical meaning, unless it clearly appears from other parts of the deed that the grantor did not intend that they should have that meaning.

We are of opinion that the heirs of the body of Mrs. Lovitt took a contingent remainder in the lands conveyed by the deed of January 7, 1865, and that the persons who answered that description at the time of her death were her son Henry, her daughter Jane E., and her granddaughters Hattie C. and Mary C., the children of her son Robert, who died during the lifetime of his mother. But it being conceded by the agreed facts in this case " that Mrs. Brown (*nee* Lovitt), the daughter of Mrs. Lovitt, by her acceptance of the deed of January 14, 1865, was no longer entitled to any interest under the deed of January 7, 1865," Henry C. Lovitt took one undivided moiety, and the children of Robert C. Lovitt the other undivided moiety, in the lands conveyed.

The next question to be considered is whether Mrs. Mary D. Lovitt, one of the plaintiffs, is estopped from recovery in this case. The action was originally brought by her daughters, the children of Robert C. Lovitt; but, pending the litigation, one of them (Mary C.) died, and the action was revived in the names of her mother, Mary D. Lovitt, and her sister, the surviving plaintiff, as her heirs at law. On the 8th of February, 1876, Mrs. Lovitt conveyed her life estate in the land to her sons, Robert C. and Henry C. Lovitt. On the same day they partitioned the land between them, and executed deeds of release to each other for their respective shares. In July of that year Robert C. conveyed " all of his right, title, and interest " in the land to Gideon Christian, trustee, for the separate use and benefit of his wife, Mary D. Lovitt, with authority to sell or otherwise dispose of the property whenever directed to do so by the bene-

ficiary, Mrs. Lovitt, by a writing under her hand and seal, attested by two witnesses. In September following—her husband in the meantime having died—Christian, trustee, sold and conveyed, by her direction, her interest in the property now in controversy in this case to Theodore S. Garnett, trustee, for the sole and separate use of Jane De J. Byrd, which was afterwards conveyed by Garnett, trustee, and Mrs. Byrd, to Caroline B. Nye, who devised it to her husband, David B. Nye, the plaintiff in error.

Upon the death of Mary C. Lovitt her interest in the land in controversy passed, by the law of descents, to her mother and her sister, equally. The title thus acquired, it is earnestly insisted, inured to the benefit of the plaintiff in error, and that Mrs. Lovitt is estopped from setting it up against him.

In order to avoid circuity of action, it has long been the rule that a vendor of land was estopped from setting up an after-acquired title against his vendee, where there was a warranty or covenant for title, if the eviction of his vendee would result in an action upon the covenants. But, if the land is conveyed without warranty or covenant for title, the grantor is not, in general, estopped from setting up an after-acquired title. The later cases, however, have modified this rule; and it is now established that, although there is no warranty, the grantor, in the interest of honesty and fair dealing, will be estopped from asserting an after-acquired title against his vendee, where the deed of conveyance recites or affirms that the grantor is seised of a particular estate, which the deed purports to convey, and upon the faith of which the sale was made. *Doswell* v. *Buchanan*, 3 Leigh 365, 388; *Van Rensselaer* v. *Kearney*, 11 How. 297; *French* v. *Spencer*, 21 How. 228; *Burtners* v. *Keran*, 24 Gratt. 42; *Reynolds* v. *Cook*, 83 Va. 817, 821; 2 Minor's Inst. (4th ed.) 710, and cases cited; Rawle, Cov. (4th ed.) 375–456.

The grantor in the deed whose provisions are relied upon to create the estoppel in this case is a trustee. It was made in accordance with the authority vested in him. His warranty is special, which is the usual and proper covenant for title in sales and conveyances made by a trustee. By such a conveyance the vendee only acquires, and can only expect to acquire, as a general rule, such title as is vested in the trustee.

While Mrs. Lovitt, the *cestui que trust*, united in the conveyance, she did not do so as grantor or party of the first part, but as the party " of the third part," in order that the deed might show upon its face that the trustee, in making the conveyance, was exercising the power vested in him by the deed creating the trust, with her knowledge and by her direction. It does not appear from the deed that she made any warranty or other covenant for title, or that she made any averment or affirmation that she was seised of or entitled to a particular estate in the land which the deed purported to convey. Under these circumstances, we know of no rule of law which would estop her from relying upon her after-acquired title in an action of ejectment.

The next inquiry is whether the plaintiffs were entitled to recover the whole tract or parcel of land sued for, or only one undivided moiety thereof.

The declaration avers that they are the owners in fee of the whole parcel, but the proof shows that they only have title to an undivided half.

It is clear that unless the partition between Robert and Henry Lovitt of the original tract of land operated to invest the plaintiffs with the legal title of Henry Lovitt in the land which Robert Lovitt took possession of under that partition, and which is the subject-matter of this controversy, the plaintiffs are only entitled to recover their undivided interest therein.

It was held in *Allen* v. *Gibson*, 4 Rand. 468, 477, in an action of unlawful detainer, where the right to the possession of the property alone was involved, that one tenant in common might recover the possession of the whole land, against a person having no right whatever, without joining his co-tenant. In delivering the opinion of the court, Judge Green said: "In a writ of right, and other real actions, the mere right is involved, and the proceeding and recovery must be according to the title; and, in ejectment, nothing can be recovered but that for which the lessor of the plaintiff can make a valid lease. One joint tenant, coparcener, or tenant in common, although he has a right to the possession of the whole against strangers, cannot make a valid lease for more than his own part of the land, and therefore no more can be recovered in ejectment than the part to which the lessor, who is a joint tenant, tenant in common, or parcener, is entitled."

Lomax, in his Digest (Vol. I., p. 502), says, in discussing this question: "But in a writ of right, and other real actions, the mere right is involved, and the proceeding and recovery must be according to the title."

Some of the reasons for this rule are stated by Chief Justice Parker in *Dewey* v. *Brown*, 2 Pick., at page 388, as follows: "The demandant, upon production of her title, shows that she is co-heir with five others. She will therefore have entire justice done to her if she is allowed to recover an undivided sixth part. The tenant, being in possession, ought not to be disturbed, except by those who have the right; *non constat* that the other co-heirs are not as willing that the tenant should occupy their land as that the demandant should."

Again, if the entire tract of land could be recovered by one joint owner, who only had title to a small undivided interest therein, the defendant in the action would be put at the great disadvantage of being compelled to hazard a trial,

in which, if he lost his case, he would lose the whole land, while if he gained it he would only be protected to the extent of the title of the plaintiff; for with us a judgment in ejectment is conclusive of the title of the parties. Code, sec. 2756. The joint owners might thus proceed against him, one at a time, each taking his chance, not to recover his interest or share merely, but the interest of the other co-owners also, so far as they had not been decided by prior actions.

It was said by Judge Riely, in *Marshall* v. *Palmer*, 91 Va. 344, that one tenant in common in an action of ejectment "cannot, in his own name, represent or bind his co-tenants. Each must sue for himself, and in his own name. The plaintiff can only recover such interest in the premises as he may prove himself entitled to."

The partition of the land between Robert and Henry Lovitt could have no effect upon the rights of the plaintiffs. They were not parties to it, nor in any way bound by it. When the life tenant, Mrs. Lovitt, died, in the year 1890, the original plaintiffs in this case were vested with the title to an undivided half interest therein, and the right to the possession thereof. Their election to take as their share that portion of the property which was allotted to Robert Lovitt in the partition between him and Henry Lovitt, even if the institution of this action by them for the whole of that parcel could be treated as an election, could not clothe them with the legal title to the interest of their co-owner, Henry Lovitt, therein. To acquire his title in the parcel sued for, it was necessary for them to have a release or conveyance from him, or those who held under him.

The case of *Dawson* v. *Lawrence*, 13 Ohio 544, relied upon by the counsel for the defendant in error to show that the plaintiffs were entitled to a judgment for the entire parcel of land sued for, was a suit in equity, where altogether different rules and principles prevail. The court says in that case.

that the " bill assumes the principle that, where separate
interests have been acquired under an erroneous partition,
chancery will exercise jurisdiction to bring all parties before
the court, and, while it preserves all substantial rights, will
so mold them, in making a new division of the lands, as to
impose burdens where, in equity, they ought to fall, and thus
diminish as far as practicable the evils of previous errors.
The parties are here all before us. The classes of interest
are the vendors, Smith and Houston ; Lawrence, the success-
ful recoverer from Houston of a part of his title ; the pur-
chasers from Smith ; the purchasers from Houston. Let us
look at the equities between those classes." After discussing
the equities of the various parties, the court adds : " These
ends, however, can only be reached through a suit in chancery,
where jurisdiction in a case like the present is abundantly
justified by precedents. 1 Story Eq. Jur. 647, *et seq. ; In re
Prentiss,* 7 Ohio (Pt. II.) 132. The analogy is strong be-
tween the interposition of the court in this case, and the
powers they exercise in marshalling assets, or in the adjust-
ment of liens and priorities between different creditors, or
successive purchasers or mortgagees, or in a suit by alienees
of land subject to dower to assign the dowress the land of
the heir."

In the case at bar neither Henry Lovitt nor his vendees
are, or could properly be, before the court. Except in a very
limited class of cases, of which this is not one, a court of law,
in an action of ejectment, is governed by the rigid rules of
law, and decides according to the legal rights alone of the
parties, and leaves them to settle their equitable rights in the
equity forum, where alone they can be properly settled.
*Suttle* v. *Railroad Co.,* 76 Va. 284, 291.

We are of opinion that the plaintiffs were only entitled to
judgment for one undivided moiety of the land sued for, and
that the trial court, in rendering judgment in their favor for

the whole parcel, erred ; and for that error its judgment must be reversed, and such judgment entered by this court as that court ought to have entered.

*Reversed.*