### SCOTT v. INDUSTRIAL FINANCE CORPORATION. (No. 2360.)*

(Court of Civil Appeals of Texas. Amarillo. July 2, 1924. Rehearing Denied Oct. 8, 1924.)

I. Pleading ⬅➡248(3)—Amendment of petition to show that trade acceptance sued on was drawn in plaintiff's favor, and latter's name signed by another corporation, held not error.

Where plaintiff alleged and showed that defendant had possession of trade acceptance sued on when suit was instituted and up to trial, and gave him notice in petition to produce it, court did not err in permitting introduction of copy of acceptance indicating that it was drawn by plaintiff on defendant, instead of by another corporation, as alleged, and permitting amendment of petition by interlineation to allege that plaintiff's name was signed thereto by drawer, no new issue being introduced.

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction December 10, 1924.

**2. Evidence ☞441(15)—Contemporaneous parol agreement as to use of automobile by one executing trust receipt prohibiting use held inadmissible.**

In action on trade acceptance, given in part payment for automobile, secured by trust receipt, requiring defendant to return it to plaintiff unused on demand before sale, evidence of contemporaneous parol agreement that defendant might use car was incompetent, and no basis for recovery of damages for breach, in absence of fraud or mistake in execution of receipt.

**3. Evidence ☞445(1)—Parol agreement modifying prior written agreement admissible and valid in some cases.**

Under some circumstances, parol agreement modifying terms of prior written agreement is admissible and valid.

**4. Chattel mortgages ☞161—Purchaser, executing trust receipt requiring return of automobile, unused, on demand, cannot recover damages for deprivation of use and possession.**

One executing trust receipt obligating him to return automobile, unused and in good condition, on demand before sale, to secure trade acceptance, given as part payment for such car, could not recover damages for deprivation of its use and possession by holder of receipt.

**5. Sales ☞426—Measure of automobile seller's responsibility for defects held fixed by written warranty.**

Measure of automobile seller's responsibility for defects held fixed by written warranty limiting obligation to making good defective parts returned within 90 days after delivery of vehicle.

**6. Sales ☞287(4)—Return of automobile with defective part sufficient compliance with warranty to make good defective parts returned.**

Buyer's return of automobile with defective part for remedy is sufficient compliance with written warranty to make good defective parts returned.

**7. Sales ☞441(3) — Breach of warranty by failure to replace other defective parts of automobile than transmission case held not shown.**

Evidence held sufficient to make case of liability for and sustain recovery of stated sum for automobile seller's breach of warranty to replace defective parts by failure to put in new transmission case, but insufficient to show what other parts were defective or value thereof.

**8. Partnership ☞213(2)—Allegation of partnership not denied under oath presents no issuable fact.**

Under Rev. St. art. 1906, subd. 6, allegation of partnership, not denied under oath, presents no issuable fact.

**9. Appeal and error ☞1140(1)—Error in refusal to submit issue of plaintiff's liability for breach of warranty as to one item held curable by remittitur.**

Error in refusing to submit issue of plaintiff's liability for breach of warranty to replace defective parts of automobile by failure to put in new transmission case costing $26.50 held curable by remittitur of such amount from judgment for plaintiff, in absence of evidence of what other defective parts were and value thereof.

On Motion for Rehearing.

**10. Appeal and error ☞997(1)—Trial ☞139(1)—Trial judge and appellate court may determine sufficiency of evidence to warrant submission to jury.**

It is province of trial judge and appellate court to determine sufficiency of evidence to warrant submission of issue to jury.

**11. Sales ☞439—Burden on buyer to prove alleged breach of warranty and facts from which amount of damages can be assessed.**

To recover damages for breach of automobile seller's warranty to replace defective parts, buyer has burden of proving breach and facts from which amount of damages can be assessed, as by showing that certain part was defective, seller's refusal to replace it, and its value.

**12. Sales ☞279—Warranty to replace defective parts held not to cover labor in installation.**

Under seller's warranty to replace defective parts of automobile, cost of labor in putting material into car held not chargeable to seller.

**13. Appeal and error ☞1177(7)—Rendition of judgment or remand for new trial, where facts are not fully developed, within appellate court's discretion.**

Whether appellate court should render judgment on record made or remand for new trial, where facts are not fully developed, is somewhat within its discretion, as interests of justice may require.

**14. Appeal and error ☞1177(7)—No remand for new trial where judgment would have been against appellant, except for appellee's failure to deny partnership under oath.**

Where judgment would have been against appellant on issue as to appellee's liability as partner for seller's breach of warranty, except for appellee's failure to deny partnership under oath, judgment will not be reversed and remanded, to permit proof of damages from warranty.

Appeal from District Court, Collingsworth County; E. A. Simpson, Special Judge.

Action by the Industrial Finance Corporation against R. L. Scott. Judgment for plaintiff, and defendant appeals. Affirmed conditionally.

R. H. Templeton, of Wellington, and J. E. Brown, of Lamesa, for appellant.

C. C. Small, of Wellington, for appellee.

BOYCE, J. The Industrial Finance Corporation brought this suit against R. L. Scott on what is known as a trade acceptance, alleged to have been drawn by the Studebaker Corporation of America, in favor of the Industrial Finance Corporation, on defendant, Scott, and accepted by him. The defendant answered that the trade acceptance was given in part payment for an automobile

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

purchased by him from the Studebaker Corporation; that in the sale of the said automobile and contract in reference thereto the Studebaker Corporation and the plaintiff were partners; that the Studebaker Corporation guaranteed said automobile against defects in material and workmanship, and guaranteed that the automobile was in perfect condition, and agreed to replace all parts of said automobile not found to fulfill the terms of the warranty; that the automobile was not as warranted and was worth the sum of $800 less what it would have been if in perfect condition as warranted. Wherefore the defendant sought to offset the amount due on the acceptance by such sum of $800.

By a cross-action the defendant alleged that the plaintiff wrongfully took possession of said automobile and deprived the defendant of the use thereof for several days, to his damage, which was specifically alleged, and afterwards wrongfully sequestrated the automobile to defendant's further damage, and sought to recover such damages. The plaintiff replied to this cross-action that the defendants secured the payment of the trade acceptance by a trust receipt, which provided that the defendant should hold the automobile in trust for the Industrial Finance Corporation for storage and sale on account of the Finance Corporation; that the defendant had no right to use or operate said automobile and thereby agreed, on demand, prior to any sale, to return the property unused and in good condition to the Industrial Finance Corporation. It was further alleged that the defendant used the car in violation of said agreement, and that because of such fact the plaintiff took possession thereof. Defendant replied to this pleading that the plaintiff agreed by parol, contemporaneously with the execution of the trust agreement, "that the defendant might use said car as he pleased, and if there was any stipulation in said trust agreement preventing the use of said car it was put there by oversight, mistake, and contrary to the agreement, and that said oral agreement was part and parcel of the said sale and made contemporaneously with the said sale, and that afterwards the said agents (of the Studebaker and Finance Corporation) said defendants using said car and agreed that he might use same, as he was using same, and that they would have no objections, and by reason of said oral agreement and ratifications they are now estopped from setting up such agreement." The plaintiff denied partnership with the Studebaker Corporation, but such denial was not made under oath. Other issues were tendered by the pleadings of the parties, but as questions in relation thereto are not brought forward on this appeal it is not necessary to state them here.

This appeal is from a judgment rendered for the plaintiff on the trade acceptance on verdict returned under peremptory instruction from the trial judge. Further statement of the proceedings and evidence will be made in connection with the consideration of the propositions presented for our decision.

[1] It is first insisted that the trial court committed error in allowing the plaintiff to introduce in evidence, and recover thereon, a trade acceptance which varied from that sued on in that it was drawn by the Industrial Finance Corporation on defendant, instead of by the Studebaker Corporation, as alleged. It was alleged and shown that at the time of the institution of the suit and up to the trial the defendant had possession of the trade acceptance sued on, it not being necessary to state the details of the manner in which this possession was secured, and plaintiff, in its petition, gave defendant notice to produce such acceptance. When on the trial the instrument, or a copy, was produced and the variance became apparent, the court made the following ruling:

"I will permit the introduction of the copy of the acceptance and permit the plaintiff to amend his first amended original petition by interlineation to show the acceptance was drawn by the Studebaker Corporation in favor of the plaintiff, and that the Studebaker Corporation signed the name of the plaintiff to the acceptance."

We think there was no error in this ruling. The defendant was not misled, and was in no position to claim "surprise." No new issue was brought into the case and no injury to the real merits of the appellant's defense and cross-action was done by such ruling.

At the time of the purchase of the automobile from the Studebaker Corporation the plaintiff paid a certain amount in cash, and for the balance of the purchase price executed the trade acceptance. This instrument was an order drawn by the Finance Corporation, addressed to R. L. Scott, for the payment of certain money at a stated time and place to the Industrial Corporation. An acceptance thereof by Scott was indorsed thereon. At the time of the execution of the acceptance and as security for its payment Scott executed the trust receipt referred to in the pleadings, which instrument acknowledged the receipt from the Studebaker Corporation of the automobile in question "for the Industrial Finance Corporation," on behalf of the holder of the acceptance. This instrument was in part as follows:

"In consideration thereof it is agreed that the undersigned [Scott] will hold said property in trust as the property of said Industrial Finance Corporation, for the purpose of storing said property in a clean, dry place, free of charge; that the undersigned has not the right to and will not operate or use said property of the Industrial Finance Corporation for demonstration purposes, nor loan, rent, mortgage, pledge, in-

cumber, sell, or deliver said property except as authorized herein; * * * that the undersigned, upon demand prior to such sale, will return said property unused and in good condition to the order of the Industrial Finance Corporation."

The defendant testified with reference to the execution of this trust receipt that:

"At the time I signed the contract, and afterwards, I had a conversation with the Studebaker people in the presence of Mr. McDaniel with reference to the purpose for which I was buying the car and the use I would put the same to [that is, that he was to be permitted to drive the car during such time]. I had this conversation with the same parties from whom I bought the car and in the presence of the same parties that signed the papers or contract. The contract was made at that time and was a part of the same trade, and after the signing of the contract I further had this conversation and agreement."

The defendant further testified that while he had possession of the car an agent of the Studebaker Corporation came to his place of business and knowing that the defendant was using the car made no objection thereto.

About a month after the purchase the defendant delivered the automobile to the Studebaker Company for repair, as later stated more fully. He had at this time driven the car about 3,000 miles. The Finance Corporation thereupon took possession of the automobile, claiming that the defendant had violated his agreement·as to its use, and refused to permit him to get it without payment of the acceptance, which was not at that time due. After the expiration of about a week from the time the Finance Corporation thus took possession of the car, and after being informed by the Studebaker Corporation that the car had been put in good condition, the defendant gave his check to the Finance Corporation for the amount due on the acceptance, and thereupon the car was delivered to him. · The defendant. testified that he discovered that the car had not been fixed, and so stopped the payment of the check. The Finance Corporation immediately brought this suit on the acceptance and sequestered the car, it being subsequently replevied by Scott. The defendant claims damages, the items of which we need not detail on account of being deprived of the use and possession of the car wrongfully, according to his contention, as stated.

[2-4] There was no evidence offered of fraud or mistake in the execution of the trust receipt, and the evidence of the contemporaneous parol agreement as to the use.of the automobile by Scott was not competent, and furnished no basis for recovery of damages for the breach of the oral agreement. Under some circumstances a subsequent parol agreement, modifying the terms of a prior written agreement, is admissible and will be held to be valid. Heatherly v. Record, 12

Tex. 49; Self v. King, 28 Tex. 552; Dr. Koch's· Vegetable Tea Co. v. Malone (Tex. Civ. App.) 163 S. W. 662; 10 R. C. L. pp. 1033, 1034, § 225; Enc. of Evidence, vol. 9, p. 358; Jones on Evidence, § 442; notes, 56 Am. St. Rep. 664. We doubt whether, under the rule stated in these authorities, the evidence in· this case is sufficient to have warranted the finding of a valid, subsequent contract by oral agreement. However this may be, the contract gave the Finance Corporation the unconditional right to demand possession of the automobile at any time "before its sale," so that defendant cannot recover damages on account of being deprived of its use and possession by the said company.

The other proposition presented concerns the question of damages for breach of warranty against defects. There is a good deal of evidence as to warranties and agreements as to the condition of the car, but when they are all considered together, and the evidence boiled down, the result is that the car was bought on this warranty:

"We [the Studebaker Corporation] warrant each motor vehicle sold by us, whether passenger car or commercial vehicle, to be free from defects in material and workmanship under normal use and service, our obligation under this warranty being limited to making good at our shops any parts thereof which shall within 90 days after delivery of such vehicle to the original purchaser be returned to us with transportation charges prepaid and which our examination shall disclose to our satisfaction to have been thus defective, this warrant being expressly in lieu of all other obligations or liabilities on our part, and we neither assume nor authorize any person to assume for us any other liability in connection with the sale of our motor vehicle."

The defendant had been handling Studebaker cars for a good many years, and was familiar with the terms of this warranty as it entered into the agreement under which he had been handling cars for years. He testified that a grinding, growling noise soon developed in the car, after it was delivered to him, which indicated that something was wrong with it. He had mechanics to examine it, and their diagnosis was that the trouble was in the transmission; that it was. out of alignment. Various conditions were suggested that might cause this, such as a sprung chassis, or an improper alignment of the transmission in assembling the car, etc. But no witness examined the car sufficiently to express an opinion as to what material would be necessary to be furnished to remedy the trouble. It was suggested that it needed a new transmission. The defendant, on· advice of an agent of the Studebaker Corporation, took the car to the Dallas shops of said corporation to have it fixed. It was on. this occasion that the Finance Corporation took possession of it, as already detailed. At such time it was finally agreed that the·

Studebaker Corporation would "fix the car"; that defendant would then return to Dallas, and pay the Finance Corporation the balance due on the acceptance, and get the car. This fixing, evidently in contemplation of the parties, involved the installation of a new transmission, or at least a new transmission case, as it was shown that the transmission case was broken. Defendant did return to Dallas, and was informed that the car had been put in good condition. He gave his check to the Finance Corporation, taking an order on his home bank (which had possession, for the purpose of collection of the acceptance) for its delivery. Defendant drove the car home, got possession of the acceptance on the order mentioned, and then instructed the bank to refuse payment on his check. Defendant testified that he discovered on his way home that the car was not yet altogether right, and that after he got the acceptance, and before he countermanded payment of the check, he discovered that the new transmission case had not been put in the car, as represented. The cost of a new transmission case was shown to be $26.50. The Studebaker Corporation's bill for fixing the car at Dallas, which defendant paid, contained a charge of $26.50 for a transmission case, together with labor charge of installation, and was then credited with the price of the transmission, so that defendant paid for the labor only. The defendant testified that when the Studebaker Corporation was notified that the car had not been fixed it refused to do anything further; that he continued to drive it. "I had to have the car fixed. I carried it to Witchia Falls, and had it examined by an expert, and had parts of it fixed and spent $12 or $15 on it. I drove the car around here several months after that, and do not remember when I did dispose of it."

[5-8] The written warranty fixed the measure of the responsibility of the Studebaker Corporation on the contract of warranty sued on. Nunn v. Brillhart (Tex. Com. App.) 242 S. W. 461; Elmberg Co. v. Dunlap Hdw. Co. (Tex. Civ. App.) 234 S. W. 700. The evidence is sufficient to justify a conclusion that something in connection with the transmission was defective so as to impose liability on the part of the Studebaker Corporation for its replacement under the terms of the warranty, the return of the car with the defective part for remedy was a sufficient compliance with the terms of the warranty. If the evidence had definitely shown the parts that were defective within the terms of the warranty, and that the Studebaker Corporation refused to replace them then the defendant would have been entitled to recover the price of such parts. The evidence is sufficient, we think, to make a case of liability for failure to put in a new transmission case, and would have sustained a recovery by defendant on this account of the sum of $26.50. There might have been other defects that

were covered by the warranty, but the defendant did not offer sufficient evidence as to what they were nor as to the value of these parts to entitle him to recover anything more on the contract sued on than the $26.50. The Finance Corporation contends that under the evidence it would not be liable with the Studebaker Corporation for any such damages. The allegation of partnership was not denied under oath, and was not an issuable fact. Revised Statutes, art. 1906, subd. 6; Railway Co. v Tisdale, 74 Tex. 8, 11 S. W. 900, 4 L. R. A. 545; G., C. & S. F. Ry. Co. v. Edloff, 89 Tex. 464, 34 S. W. 414, 35 S. W. 144; Fort Worth & Denver City Ry. Co. v. Shank & Dean (Tex. Civ. App.) 167 S. W. 1093.

[9] We conclude, therefore, that the trial court committed error in refusing to submit this issue to the jury; but since the limit of liability of the Finance Corporation under the evidence would have been the sum of $26.50 we think the error committed in this respect may be cured by a remittitur of that amount. We therefore affirm the judgment on condition that the appellee shall, on or before the 6th day of October, 1924, file with the clerk of this court a remittitur as stated. If such remittitur be not filed within such time, then the judgment will be reversed, and the cause remanded.

### On Motion for Rehearing.

[10] The motion for rehearing complains that we have affirmed the case on condition of remittitur, rather than reversing and remanding for a new trial. It is said that we have conceded that there is evidence as to defects in the transmission that would entitle appellant to recover on the warranty mentioned in the opinion, and that it was error for us to pass on the sufficiency of the evidence on the issue of damages. It is the province of the trial judge and the appellate court, in cases tried before a jury, to determine whether the evidence is sufficient to warrant the submission of an issue to the jury.

[11] Now in this case the plaintiff, in order to recover damages for breach of warranty, had the burden of proving the breach, and in addition facts from which the amount of damages caused thereby could be assessed, for instance: The appellant to recover here, must show that a certain part of the automobile was defective; that the Studebaker Corporation refused to replace it under the warranty, and follow this by proof of its value. Absence of any proof as to the value of the part would prevent appellant from going to the jury on the issue. It is in this respect that the appellant, as we understand it, failed to make out his case, except as to the damages due to the defective transmission case.

[12] Appellant calls our attention to the testimony given by Scott to the effect that,

from his experience, he could say that it would take from $300 to $800 to repair the car and put it in good condition. This, we think, evidently includes, not only the cost of purchasing the material, but of labor in putting it in the car, which under the warranty sued on could not be charged to the Studebaker Corporation; so that, as the case is made, the only item on which appellant was entitled to go to the jury was that for breach of warranty as to the transmission case.

[13] The facts were not, as appellant says, fully developed. Whether under such circumstances, we should render judgment on the record made, or remand for a new trial, is a matter somewhat within our discretion to be determined, "as the interest of justice may require." Pershing v. Henry (Tex. Com. App.) 255 S. W. 384.

[14] Our examination of the record convinces us that but for the failure of the appellee to deny partnership with the Studebaker Corporation under oath, the judgment would, in any event, have been against the appellant on this issue. It appears practically certain to us, that while appellant might be strengthening his case on the evidence, the appellee would be equally busy on its pleadings, and that the final result on another trial would be the same as before. On the whole we were of the opinion, and remain of that opinion, that no good purpose would be served by remanding the case for a new trial.

We therefore overrule the motion.