On June 7th, 1940, plaintiff purchased from defendant a 1939 model Buick automobile for the price of $850. Defendant gave plaintiff a credit of $375 on the purchase price, representing the trade-in value of one used Hudson-Terraplane Sedan, which plaintiff delivered to defendant. The balance of the purchase price, $475, was paid to the defendant in cash. The written invoice and bill of sale to plaintiff carried a "new car guarantee", and warranted the Buick to be, in all respects, in good running order.
It appears that within three days after the car was delivered to plaintiff, he sent it back to defendant's place of business and complained about the defective condition of the steering apparatus. Told that this would require a minor adjustment, he allowed the car to be kept two days by defendant. Two days after its return, plaintiff finding that the defect complained of had not been properly corrected, again returned it to defendant, who kept it in the repair shop for two more days; that on its return, plaintiff again found the same condition originally complained of and again *Page 121 
returned the car to defendant. On this third attempt to obtain proper repairs, defendant replaced the steering assembly with a second-hand assembly, during which time the car was again kept two more days. Upon its return to plaintiff, he discovered that the steering apparatus was still defective and realizing the futility of having his car properly repaired by defendant, he sent it to the Community Motors. Plaintiff was thereupon informed that the steering assembly and tie rods had not been previously changed or repaired, were no longer serviceable, and that due to the danger involved, the installation of a complete new assembly and rods was imperative. This replacement was made by the Community Motors at a cost of $43.73.
It appears that on each occasion, aggregating six or seven times, plaintiff called defendant's attention to other specific defects needing correction. Little purpose will be served in detailing these numerous complaints and the list of specific parts needing replacement or repair, suffice it to say, that these complaints began two days after the date of the sale to plaintiff and that each defect complained of was such as prevented the normal and comfortable use intended to be had as a result of the purchase. It also appears that these defects repeatedly complained of were, in some instances, not attended to, and in others, improperly repaired by the defendant, resulting in plaintiff having the work done at Doswell's Garage at a cost of $27.10.
Plaintiff also contends that there were two other defects in the Buick which fall within the scope of defendant's guaranty; that these defects have not been repaired, or defective parts replaced, and that the sum of $46.15 would cover the cost of these items. The total cost of all repairs and material involved amounts to the sum of $116.98. Accordingly, plaintiff instituted this suit against the defendant to recover this amount.
The lower court awarded plaintiff judgment in the sum of $70.83, the amount actually expended by him for the repairs made to the car and the defendant is prosecuting this appeal. Plaintiff has answered the appeal asking that the award be increased to the sum originally prayed for.
In their brief, counsel for defendant concede that the "new car guarantee", contained in the invoice or bill of sale in this instance, is the standard guarantee that is given in the automobile trade and necessarily means that any purchaser is thereby protected against liability for repairs and parts during ninety days after making delivery of such vehicle to the purchaser, or before such vehicle has been driven four thousand miles, depending upon which event shall first occur. It is also conceded, that such was the understanding of the purchaser and seller in this instance. This, necessarily, must be conceded for the invoice or bill of sale contains a stipulation reading as follows:
"This car carries a new car guarantee".
It is obvious, therefore, that defendant not only warranted the Buick to be free from defects in material and workmanship, but also bound and obligated itself to make such repairs and furnish such parts during this fixed period of time, and free of cost to the purchaser, as would permit the normal use and service of the vehicle so purchased.
We experience little difficulty in concluding that the car sold to plaintiff was not in good running order, not serviceable at the time it was purchased, and had such vices and defects as to prevent the normal, safe and comfortable use contemplated by the parties.
Defendant contends, however, that plaintiff is not entitled to be reimbursed the amounts paid by him for the material and workmanship furnished by the Community Motors and Doswell's Garage, for the reason that the parts or repairs called for by the guaranty were to be furnished by the seller only, and that the plaintiff did not give the defendant a reasonable opportunity of complying with his guaranty before resorting to having the required work done elsewhere, with its attendant cost.
The record shows that plaintiff made repeated calls on defendant to repair the apparent defects and to put the car in good and serviceable condition. On each of these various occasions, plaintiff pointed out to defendant, or his agents, the specific defects which would, in some measure, satisfy the guaranty called for by the bill of sale. It is shown that defendant had every facility for ascertaining the trouble and providing a proper remedy. The car was left in defendant's garage and repair shop six or seven times and, on three of these occasions, remained there two full days, thus affording defendant the opportunity of making proper inspection and repairs, as it had expressly warranted to do. *Page 122 
It is amply shown that these defects and vices were not tended to by defendant, and, in instances where attempts to do so were made, were not satisfactorily or properly done. It was upon these repeated failures of defendant to have complied with his guaranty, that plaintiff resorted to having the work performed by others. The evidence shows that it was only after the car had been repaired elsewhere, that the work proved satisfactory.
Under these circumstances, we cannot say that plaintiff acted impatiently or arbitrarily.
We consider significant a letter written by counsel for defendant in reply to plaintiff's demand for reimbursement. Undoubtedly, this letter reflects an explanation of defendant's attitude as to plaintiff's right to have had any repairs done or materials furnished after his purchase. In this letter defendant speaks of his liberality in allowing plaintiff a trade-in credit of $375, and complains of the fact that he stood a loss of $100 on this feature of the transaction. Defendant then says therein that the sale to plaintiff was effected through a form, which he calls a "Used Car Order", and that this order, which plaintiff signed, states specifically that plaintiff "takes the car `As Is', with no other warranty other than the warranty of title". Obviously this letter clearly reflects what defendant mistakenly believed all the while that plaintiff was endeavoring to enforce his guaranty, and which elucidates defendant's repeated failures to have complied with the express obligation he contractually assumed.
We conclude that having given defendant reasonable opportunity — a period of almost thirty days — during which time defendant repeatedly failed to do that which he had obligated himself to do, plaintiff was justified, under the circumstances, to have the necessary repairs made and damaged parts replaced by some one other than the defendant, thus entitling him to recover the cost so expended.
We do not find sufficient proof in the record to warrant an increase in the award made by the court below.
We, therefore, conclude, that the lower court has properly determined the case, consequently, and
For the reasons assigned the judgment appealed from is affirmed with costs.
Affirmed.