GEORGE H. MARTIN, ET AL., *v.* JOHN T. NORRIS, JR.
[No. 110, October Term, 1946.]

*Decided April 18, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*J. Cookman Boyd, Jr.,* for the appellants.

*Isadore Ginsberg,* with whom were *Ginsberg & Ginsberg* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

The appellee in this case brought suit against the appellants who are automobile dealers, for damages resulting from his purchase, from them, of a used Studebaker automobile. The *narr* states that the defendants warranted the automobile to be in good operating condition; that it was not; that the price paid was $760.74; that in view of the condition of the automobile the price was in excess of the ceiling price as established by the Office of Price Administration, and therefore the plaintiff is entitled to recover damages in accordance with the price control statute enacted by Congress. 50 *U. S. C. A. Appendix,* Sec. 901 *et seq.* On demand a bill of particulars was furnished. It set out the details of the repairs made to the automobile, and claimed a total of three times the costs of these repairs, amounting to $844.14. The defendants filed the general issue pleas. The case was tried before the Court of Common Pleas of Baltimore City

without a jury, and a judgment was entered in favor of the plaintiff-appellee for the amount of the repairs or replacements put upon the car without any multiplication. This amount was $281.38. From this judgment, the defendants appealed.

The evidence shows that on January 4, 1946, the date of the purchase, the "as is" price allowed by the price control regulations for a 1940 Studebaker car of the model sold, was $594.00. The price when warranted, was $743. If, in addition there was a heater put in the car, the warranted price of which was $11.53, the price would be $754.53. This was the exact selling price of the car, the additional $6.21 being for tags, title and anti-freeze mixture. A warranty was given by the appellants. It reads as follows:

"The used vehicle described below, is hereby warranted to be in good operating condition, and to remain in such condition under normal use and service for a period of 30 days after delivery, or 1,000 miles, whichever may first occur.

"We agree, if said car is delivered during the above period to our place of business, to make with reasonable promptness any repairs or replacements which may be necessary to its good operating condition in accordance with normal use and service, at a cost to the purchaser named below of not more than 50% of the normal charge for such repairs and replacements. Our normal charge is not in excess of OPA ceilings.

"This warranty does not extend to tires, tubes, paint, glass, upholstery, or to any repairs or replacements made necessary by misuse, negligence, or accident."

Without detailing the testimony it is sufficient to say the evidence shows that when the car was bought the appellee had his father, who was a skilled mechanic, go over the car. He found that the bearings were bad and he thought the piston rings should be changed. The appellants did check the bearings, and offered to do the piston ring job on a 50% basis, but this was not accepted by the appellee. He then purchased the car and drove

it about a week. It then began to get noisy. He did not take the car back to the appellants, but took it to the repair firm of White & Son and paid them $24.00 for certain replacements they put in. Subsequently, appellee's father again examined the car and found it would have to be overhauled. It was not taken to the appellants. The appellee took it to the Baltimore Automotive Service on January 19th. There it was found that either a reground crank shaft or a new one had to be put in. A new clutch, rings, pistons, etc. would be included. The Baltimore Automotive Service put in a new engine and the other parts, for which they were paid $222.38. Later the car was again taken, not to the appellants but to White & Son. They relined the brakes, and made other repairs at a cost of $35.00. The evidence does not show that the car was taken back to the appellants during the period of thirty days after January 6th for the purpose of making any of these repairs or replacements, nor does it show that they declined to make any of them.

The learned judge below held that the warranty was severable. The first clause, in his opinion, represented the terms on which the car was sold and warranted it to be in good operating condition. The second clause, he found, was an agreement to make repairs on a 50% basis if the dealers made them. We have reached a different conclusion.

It seems clear to us that the plain meaning of the warranty is that if the car is found not to be in good operating condition at any time for thirty days after delivery (or 1,000 miles) and if it is delivered during said period to the dealers, they will make any repairs or replacements necessary to put it in such condition in accordance with normal use and service at a cost of 50%. That is one warranty, not two. If the first paragraph were not modified by the second, then the dealers would be responsible for any repairs necessary to put the car in good operating condition, whether done by them or anyone else. The second paragraph, however, provides what they are to do if the car is not in good

operating condition. This is to make repairs at 50% of the normal charge, if the car is delivered to their place of business. This last clause would be entirely meaningless if the purchaser could take the car to someone else for the repairs, and then recover the full amount from the dealers. No purchaser would bring a car back to be repaired by the dealers and pay 50% of the cost, if he could have it repaired elsewhere, and recover all the cost. The warranty was one prescribed by the Office of Price Control for the obvious purpose of protecting purchasers at a time when all sorts of infirm and decrepit used cars were being eagerly bought. Dealers were allowed to sell such cars at a higher price if they warranted them with a qualified warranty. Had an unqualified warranty been required, it may be reasonably supposed that dealers would not have been willing to give it on the grades of cars passing through their hands.

The speedometer on the car in this case showed that it had been driven approximately 70,000 miles. We are not required to find whether or not it was in good operating condition, or whether the repairs made in this case were necessary to put it in such condition, because we do not think the appellants are liable for them. Were they necessary and had the car been returned to them within thirty days, they would have been obliged to repair it, and could charge the appellee only 50% of the cost. Since the car was not brought to them, and they did not make the repairs, and it is not shown that they refused to make them, the appellee has not done what was required of him under the warranty, and, therefore, he cannot recover. The appellee relies upon the case of *White Automobile Co. v. Dorsey,* 119 Md. 251, 86 A. 617. In that case a new car was sold to the plaintiff and the dealer warranted it to be sound and free from defects in workmanship and satisfactory to the plaintiff, and that it would keep it in satisfactory running condition without expense to the plaintiff for a period of one year. The Court said that these were two

distinct agreements. First, a warranty, and, secondly, a contract to keep the car in satisfactory running condition without expense to the plaintiff. That case is distinguishable from the one before us because the agreement was not in any way tied up with the warranty as in this case. The warranty in the White Automobile Co. case was absolute, and affected the condition at the time the car was sold. The subsequent agreement had no necessary connection with the condition at the time of sale, but was an additional obligation undertaken to keep the car in running condition for a year. In the case before us the warranty was not absolute but was coupled with the condition that if it was not found to be in good operating condition within thirty days, then the dealers would bear 50% of the cost. The second sentence in the warranty refers to "repairs or replacements which may be necessary to its good operating condition in accordance with normal use and service." These are substantially the same words used in the first paragraph. It seems obvious to us that this was a conditional warranty and that, as we have shown, the appellants are not liable unless the conditions of the warranty imposed on the appellee were carried out by him, which they were not.

The same construction of the warranty is given in Price Regulation 540 of the Office of Price Control, of which we take judicial notice. The *Federal Register Act* of 1935, 49 Statutes, 500, 501, 502, 44 U. S. C. A., Secs. 301, 305(a), 307. *Emergency Price Control Act,* 56 Statutes 23, 50 U. S. C. A. Appendix, Sec. 901 *et seq. Morrison v. Hutchins,* 158 Kan. 123, 144 P. 2d 922. This regulation issued before the warranty sued on was executed, states in part, "The inclusion in the maximum price of an additional amount when a used car is warranted is also conditioned upon the making of repairs or replacements in accordance with the dealer's warranty. If the dealer refuses so to make these repairs or replacements, the maximum price for the car shall be the maximum price for the car when warranted, reduced by

▮▮▮

▮▮▮

50% of the amount the purchaser would have to pay for the repairing or replacement which the dealer should have made under his warranty, and the dealer shall refund the amount of that reduction to the buyer."

For the reasons above stated the judgment will be reversed and a judgment entered for the appellants for costs.

*Judgment reversed with costs and judgment entered for the appellants for costs.*