### Mildred Newton v. Smith Motors, Inc.

[ 175 A.2d 514 ]

September Term, 1961

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed November 7, 1961

410

*Hanford G. Davis* for the plaintiff.

*Bloomer & Bloomer* for the defendant.

**Holden, J.** The plaintiff seeks restitution of the initial payment made in the purchase of a used car from the defendant. The action is founded on an informal rescission of the contract by the buyer for an alleged breach of an express warranty on the part of the seller. The jury found for the plaintiff, judgment was entered on the verdict and the defendant appeals.

Early in March, 1958 the plaintiff purchased a 1957 Ford convertible automobile from the defendant. She paid the defendant three hundred dollars in addition to an allowance of four hundred dollars as the value of her 1950 Chevrolet, which the defendant accepted as part of the trade. The remainder of the purchase price was secured by a conditional sale contract which provided for the payment of the

balance in monthly installments commencing May 8, 1958. At the time of this transaction the defendant gave the plaintiff a bill of sale upon which was written the words "90 day new car guarantee."

After the sale and delivery of the Ford, the defendant, at the plaintiff's request, made several minor repairs and adjustments without charge to the plaintiff. On April 8, 1958 the plaintiff brought the car to the defendant's place of business and complained of excessive wear on the tires. The defendant replaced the worn tires with some that were slightly used, at reduced cost to the plaintiff. When the replacement tires showed excessive wear, the plaintiff caused the vehicle to be inspected by a specialist in wheel and frame alignment. The inspection, by means of a mechanical alignment device, revealed that the frame was bent or sprung causing it to be out of true alignment about three-quarters of an inch. It further appears from the record that a defect of this nature is caused by a collision or faulty manufacture. The plaintiff refused the defendant's offer to repair the defect.

On May 25 the plaintiff returned the car to the defendant and requested the return of the money and the value of the car she had exchanged. She informed the defendant's representative that she was not interested in trading for another vehicle nor in having the Ford repaired. The defendant refused the refund. Shortly afterward at the instance of the seller the sheriff repossessed the vehicle and it was resold.

The jury awarded the plaintiff a verdict of $700. The defendant appeals from the judgment that followed.

During the trial the defendant sought to introduce in evidence a portion of a printed document entitled Authorized Ford Dealer's Service Warranty, marked Defendant's C. At the plaintiff's objection that the instrument was immaterial and not within the contemplation of the parties at the time of the sale, the offer was excluded. The defendant assigns error to this ruling and argues that Defendant's C constitutes the best evidence of the meaning of the words "90 day new car guarantee," written on the bill of sale. The defendant further contends that by usage in the automobile trade in this locality these particular words contemplate and refer to the warranty that would be given had the car been purchased from a new car dealer of that particular manufacture.

The plaintiff's principal witness, who represented the defendant in the sale, testified that neither he nor the plaintiff, so far as he knew, had the Ford Dealer's Warranty (Defendant's C) in mind at the time the guarantee was given. No reference was made to a Ford Dealer's Warranty and the plaintiff was not furnished a copy of such an instrument at the time of her purchase.

It is of course well established that a contract may be reached with reference to another writing, and the other document, or so much of it as is referred to, will be interpreted as a part of the main instrument. But the extrinsic writing must be connected by specific reference or by such mutual knowledge and understanding on the part of both parties that reference by implication is clear. If the secondary instrument was not mentioned in the undertaking and was foreign to the minds of the parties at the time of their undertaking, it is clearly irrelevant as an aid to interpretation. *Nye* v. *Lovitt,* 92 Va. 710, 715, 24 S. E. 345; *Highland Inv. Co.* v. *Kirk Co.,* 96 Ind. App. 5, 184 N.E. 308, 309; *Lee* v. *Robert Mitchell Mfg. Co.,* 45 Ohio App. 502, 187 N.E. 371, 372; Williston, Contracts, §628 (Rev. Ed. 1936) p. 1801 *et seq.;* 12 Am Jur. Contracts §246, p. 781.

In the case before us there was no specific reference to the Ford Dealer's Warranty and the defendant's witness Smith dispelled any idea that either party had such an understanding in mind at the time the bill of sale was given. On this state of the evidence the best evidence rule has no application. The defendant's offer of this instrument was correctly excluded.

This ruling cannot be disturbed by resort to usage or custom in the automobile trade. In the first place, we have been unable to find that the defendant produced any evidence to establish the prevailing custom in the sale of used cars with the type of guarantee specified on the bill of sale. Secondly, whatever meaning might attach to the words as used in the trade would not bind the plaintiff as an outsider, without a showing that she had knowledge of the trade custom. See *Russell's Executor* v. *Ferguson,* 77 Vt. 433, 435, 60 Atl. 802; *Linsley* v. *Lovely,* 26 Vt. 123, 136; 46 Am. Jur. Sales, §295; annotation in 89 A.L.R. 1235. A custom, local in character, is binding only upon persons who have knowledge of it and there is no presumption that the parties contracted with reference to it. 55 Am. Jur. Usages and Customs, §25, p. 285; see *Wood* v. *Smith,* 23 Vt. 706, 709.

In submitting the case, the trial court defined the issues to be determined by the jury in the form of four questions:

1. Did the defendant promise, represent and warrant that the 1957 Ford automobile was in good condition and free from defects as a new automobile?
2. Did the promises, representations, if any there were, by the defendant, constitute a warranty that the automobile was in as good condition and free from defects as a new automobile?
3. Was the warranty, if any, breached?
4. Is the plaintiff entitled to rescind her contract of sale and recover the sum paid to the defendant as down payment?

The defendant objected to the first two questions stated. Its claim of error is based on the contention that there was no evidence that the provision—"90 day new car guarantee"—was intended to mean that the used 1957 Ford was in as good condition and as free from defects as a new car.

It appears from the transcript of the testimony of the defendant's witness Smith that although the car was second-hand, "it was so nearly new that we gave a 90 day new car guarantee" and this "is the best guarantee we can give." The witness went on to explain that such an undertaking is a guarantee at dealer's cost to repair all major defects not caused by customer's abuse, for the period specified.

Later on in the trial, the witness was questioned further on this point:

Q. I believe you testified yesterday your reason for giving such a guarantee was that the car was so nearly new, is that right?
A. That's right.
Q. In your judgment the car was in first class condition?
A. That is true.
Q. And isn't it true, Mr. Smith, that in giving a new car guarantee that you intended to represent to Mrs. Newton that the car was in first class condition?
A. That is true.

The evidence given amply supports the submission of the questions as framed by the court's instructions. It permitted the jury to find that it was the defendant's intention to represent the vehicle to be

free from defects and material, in first class condition, comparable to that expected in a new car. From the language used in the warranty, the seller, at least, understood that it would repair any defects that might develop over a period of ninety days at no expense to the buyer. See *Cobb* v. *Truett,* La. App., 11 S.2d 120, 121; 77 C.J.S. Sales, §330e, p. 1202; 28A Words and Phrases, (Perm. Ed.) p. 90.

The explanation offered by the defendant comes squarely within the definition of an express warranty provided in the Sales Act. "Any affirmation of fact or promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation is to induce the buyer to purchase the goods and if the buyer purchases the goods relying thereon. * * *." 9 V.S.A. §1512.

The jury were justified in concluding that the sprung frame and faulty alignment constituted a breach of the warranty given on the bill of sale. Such a finding would afford the buyer an election of remedies, including the right to rescind the contract upon the return, or offer to return, of the goods sold, and entitled her to recover that part of the purchase price previously paid. 9 V.S.A. §1569 (a) (4); *Mahaney* v. *Perry Auto Exchange,* Ohio App., 85 N.E.2d. 558, 560; *White Automobile Co.* v. *Dorsey,* 119 Md. 251, 86 Atl. 617, 620.

The fact that the defendant understood that it was to have an opportunity to repair the defect is of little consequence here. The seller's understanding in this regard was not communicated to the buyer.

The right to rescind, given the buyer by statute, should not be regarded as bargained away unless the contract clearly says so, especially where the warranty was written by the seller. Williston, Sales §611a (Rev. Ed. 1948).

Here the remedy by way of repair, which the seller had in mind, was not exclusively provided. The contract did not mention it. And it has been held that even an express undertaking by the seller to repair defects in a new car over a 90-day period will not abrogate the buyer's right to elect to rescind for a breach of warranty. *Knapp* v. *Willys-Ardmore, Inc.,* 174 Pa. Super. 90, 100 A.2d 105, 109.

The defendant's remaining claim of error is directed to the court's reference to an implied warranty. In the course of the instructions to the jury, the presiding judge stated * * * "An implied warranty is one

which, not being expressly made, the law implies from the fact of sale. In fact, there is no implied warranty of the quality of the goods sold, and the quality of goods includes their state or condition, but one may be implied, however, from the statement of the seller."

The defendant objected to this abstract statement. The reason advanced is that any implied contract that may have arisen by virtue of the sale was negatived by the express warranty written on the bill of sale.

We think the rule is not as broad as it has been stated by the defendant. Warranties implied under the Sales Act are not necessarily extinguished by the giving of an express warranty concerning the goods sold. 9 V.S.A. §1515 (6) provides: "An express warranty or condition does not negative a warranty or condition implied under this chapter (Uniform Sales Act) unless inconsistent therewith." 9 V.S.A. §1571, cited by the defendant, is not at variance with this rule. See Williston, Sales, §239, 239-a (Rev. Ed. 1948).

Without pursuing the matter further, we agree with the defendant to the extent that the reference to implied warranties might better have gone unsaid. It was not made an issue in the case and was not included in the issues which the court defined in submitting the cause to the jury. Apparently the reference was made by way of explanation for it was not applied to the facts and no attempt was made to relate the definition to the evidence. Aside from this interjection, the charge as a whole was sound. Although the instruction objected to was inapplicable, we are unable to say the jury was misled. The error is not substantial; no prejudice appears. *Mt. Ida School, Inc.* v. *Gilman,* 97 Vt. 331, 335, 123 Atl. 198; *Jacobs* v. *Loyal Protective Ins. Co.,* 97 Vt. 516, 527, 124 Atl. 848; *Meyette* v. *Canadian Pacific Railway Co.,* 110 Vt. 345, 360, 6 A.2d 33.

*Judgment affirmed.*

**Hulburd, C. J.,** dissenting. The majority opinion, it seems to me, has enlarged on the scope of the warranty. It is basic law that the measure of the responsibility of the seller of a motor vehicle under an express warranty is fixed by the terms of the warranty. 77 C.J.S. Sales §330 at p. 1201. In making a warranty of a motor vehicle, the seller may put any limitation he chooses on the character of the warranty or the time during which it is to remain in effect. *Ford Motor*

*Co.* v. *Switzer,* 140 Va. 383, 125 S.E. 209; *Oldfield* v. *International Motor Co.,* 138 Md. 35, 113 Atl. 632; *Scott* v. *Industrial Finance Corp.,* Tex. Civ. App., 265 S.W.181. The warranty sued on here was a "ninety day new car guarantee." Obviously this is not the same as a "ninety day money back guarantee." I agree that under a new car guarantee the seller warranted the motor vehicle to be free from defects in material and workmanship and was bound to make such repairs and furnish such parts, without cost to the buyer during the ninety-day period, as would permit the normal use and service of the vehicle purchased. This, in fact, is the construction put upon the warranty by the parties themselves in connection with earlier defects remedied by the seller. Indeed, the plaintiff did not testify that she understood otherwise. No reasonable person, it seems to me, has any right to expect that he can get a better deal—that is, a better warranty, on a used car than is to be had on a new one. The evidence is clear that there has been no refusal or failure of the defendant to repair the vehicle. The plaintiff, instead, has refused to allow the defendant to do this and wants her money back. With the evidence standing as it did, there was no issue to submit to the jury, and I am convinced that the defendant's exception to the trial court's action to the contrary should have been sustained. Compare *Martin* v. *Norris,* 188 Md. 330, 52 A.2d 470.