RUBÉN BERRÍOS, demandante y recurrente, *v.* COURTESY MOTORS OF PUERTO RICO, INC., demandada y recurrida.

*Número:* CE-63-44 *Resuelto:* 25 de noviembre de 1964

*Leopoldo C. Delucca, y Luis A. Lugo, Jr.,* abogados ·del recurrente; *B. Sánchez, B. Sánchez Rivera, Carlos R. Vélez;* y *Ana R. Rodríguez Olazagasti,* abogados de la recurrida.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

En 21 de agosto de 1961 el recurrente Rubén Berríos adquirió por compra a la corporación recurrida Courtesy Motors of Puerto Rico, Inc. un automóvil marca Taunus, por precio total de $2,357.18, de los cuales $157.18 correspondían, con exclusión del precio, a otros gastos del contrato.(¹) Al comprador se le acreditó la suma de $1,715.00, valor que se le dio a otra unidad que entregó a la vendedora. El balance de $642.18 fue aplazado en cuanto a su pago, conviniéndose que sería satisfecho en veintiún plazos mensuales de $30.58 cada uno. (²)

Tres meses después se inició una acción redhibitoria para rescindir el contrato reseñado por adolecer el vehículo vendido de un vicio oculto. El tribunal de instancia determinó que la unidad objeto del contrato tenía un defecto en su transmisión semi-automática que se manifestaba en forma tal que malograba el cambio de velocidades que era indispensable para la marcha del vehículo, ocasionando con ello que permaneciera inmóvil, necesitando su remolque. Este percance sucedió en cerca de doce ocasiones. En todas estas ocasiones se llevó al taller de la recurrida para realizarle las reparaciones de rigor, sin éxito. Ante esta situación, el recurrente optó por

---

(¹) Entre los gastos se incluyeron partidas por concepto de investigación de crédito y traspaso de la licencia, primas por seguros de vehículo y sobre la vida del comprador en garantía de la deuda aplazada y gastos de financiamiento.

(²) Para la fecha de la vista ante el Tribunal de Distrito, en octubre de 1962, el recurrente había satisfecho puntualmente los plazos a la cesionaria del contrato de venta condicional.

rescindir el contrato, y, al negarse la empresa a recibir el vehículo, lo estacionó en la marquesina de su casa en donde todavía permanece a disposición de la vendedora. Al estimarse que se trataba de un defecto que no estaba a la vista ni era aparente o manifiesto, que hacía el vehículo impropio para el uso a que se le destinaba, y finalmente, que de haber tenido el comprador conocimiento del mismo no lo hubiese adquirido, se dictó sentencia declarando "resuelto" (sic) el contrato entre las partes. En su consecuencia, el tribunal de distrito condenó a la demandada a devolver al demandante la suma de $2,996.28 por concepto de "gastos incurridos", que se distribuye así: $1,715.00, del valor del vehículo entregado; $489.28, de 16 plazos mensuales satisfechos a la compañía de financiamiento; (³) y $792.00 de gastos en que incurriera para transportación durante un período de once meses que se vio impedido de utilizar el automóvil.

La demandada apeló. El Tribunal Superior, en una lacónica sentencia, revocó la sentencia del tribunal inferior, limitándose a expresar que el desperfecto de un artefacto mecánico susceptible de dañarse en cualquier momento o circunstancia no constituye un defecto oculto que haga el vehículo impropio para el uso a que se destina. Añadió que si ninguna de las partes podía anticipar lo que le ocurriría al vehículo, el vendedor debe tener una oportunidad razonable para reparar cualquier defecto en el mecanismo. Se apoyó en *Díaz* v. *Grissom International, Inc.*, una sentencia del mismo tribunal. Al resolver una moción de reconsideración expresó que el defecto mecánico que tenía el automóvil adquirido por Berríos no constituía un vicio oculto que diera lugar a la rescisión. Expedimos auto de *certiorari*.

■ 1—El derecho aplicable son los Arts. 1373, 1374 y 1375 del Código Civil, ed. 1930, 31 L.P.R.A. secs. 3841, 3842 y 3843, que en síntesis imponen al vendedor la obligación de

---

(³) Presumimos que cubre los plazos vencidos hasta el 24 de enero de 1962, fecha en que el tribunal de distrito dictó sentencia.

saneamiento por los defectos ocultos que tuviere la cosa vendida si la hacen impropia para el uso a que se la destina o si disminuyen de tal modo este uso que el comprador si los hubiera conocido no la habría adquirido, y en esos casos el comprador podrá desistir del contrato abonándosele los gastos que pagó, y, en caso de que el vendedor conociera los vicios, deberá además indemnizar los daños y perjuicios.[4]

■ Contrario a lo que se intima en la breve sentencia del tribunal a quo, en varias ocasiones hemos reconocido la facultad del comprador de un vehículo de motor para ampararse en la acción redhibitoria, emergente de vicio oculto. *Fuentes* v. *Hull Dobbs Co. of P.R.*, 88 D.P.R. 562 (1963), desperfectos en los neumáticos de un camión que se consideraron como equipo esencial de la unidad; *Millán* v. *Caribe Motors Corp.*, 83 D.P.R. 494, 501 (1961), fracturas en la caja de bolas, el radiador y la tapa del bloque; *Marrero* v. *Garage Mayagüez, Inc.*, 31 D.P.R. 908 (1923). En idéntico sentido se pronuncian otras jurisdicciones con preceptos similares a los de nuestro código. Así, la Sentencia de 25 de enero de 1924 del Tribunal Supremo de España (Jurisp. Civil, tomo 161, pág. 193), declara que se interpreta con recto sentido el Art. 1484 del Código Civil español (Art. 1373 de Puerto Rico) la sentencia que afirma que la soldadura del cigüeñal de un automóvil constituye, en rigor, un defecto oculto de la cosa vendida, y que aunque la circunstancia de hallarse soldado el cigüeñal no implica que sea inservible en absoluto el automóvil para el uso a que se destina, disminuye la prestación de ese servicio en términos tales, que, de haber conocido ese defecto el comprador, no habría adquirido el vehículo. Otro tanto se expresa en la Sentencia de 24 de

---

[4] En general, véanse, Borrell Soler, *El Contrato de Compraventa* (Ed. Bosch, 1952), págs. 142–152; Espín, *Manual de Derecho Civil Español* (Ed. Revista de Derecho Privado, 1961) vol. III, págs. 509–510; Castán, *Derecho Civil Español, Común y Foral* (8a. ed. 1956), vol. 4, págs. 109 y ss.; Puig Brutau, *Fundamentos de Derecho Civil*, tomo II, vol. 2°, págs. 205 y ss.

446

febrero de 1914 (Jurisp. Civil, tomo 129, pág. 499) en que se trataba de un automóvil cuyo motor se calentaba demasiado, aunque la compradora inicialmente había quedado satisfecha de su buen aspecto y cómoda disposición. En Luisiana, igual resultado se logra bajo las disposiciones del Art. 2476 del Código Civil, West's *Louisiana Civil Code*, vol. 10, pág. 275. *Stevens* v. *Diagle and Hinson Rambler, Inc.*, 153 So.2d 511 (La. 1963), admite la acción redhibitoria en el caso de un vehículo que requirió el reemplazo del motor debido al alto consumo de aceite. Véanse, además, *Davis* v. *Bryan Chevrolet Inc.*, 148 So.2d 800 (La. 1962) ; *Kennedy* v. *Jacobson-Young Inc.*, 144 So.2d 100 (La. 1962) ; *Long* v. *Holmes Ford, Inc.*, 138 So.2d 34 (La. 1962). Véase, *The Nature of the Redhibitory Action*, 4 Tul. L. Rev. 433 (1930). La acción está accesible trátese de vehículos nuevos o usados. *Newton* v. *Smith Motors Inc.*, 175 A.2d 514 (Vt. 1961) ; *Stubblefield Chevrolet Co.* v. *Martínez*, 124 So.2d 393 (La. 1960).

■ No se necesita gran esfuerzo para rechazar la conclusión del tribunal a quo al efecto de que el cuadro de hechos no presenta un caso de vicio oculto. Por no expresarlo, ignoramos el criterio que utilizó para llegar a la misma. Pero, como correctamente apreció el tribunal de distrito, se trataba de un defecto que hacía el vehículo poco menos que inservible. Prueba de ello es que en el corto lapso de tres meses fue objeto de intentos de reparación en no menos de doce ocasiones, sin que se pusiera la unidad en condiciones de uso. El eficiente y buen funcionamiento del cambio de velocidades en un vehículo es tan fundamental que no se requiere elaboración para sostener que un defecto de que adolezca que lo haga prácticamente inútil constituye un vicio que da lugar a la rescisión. Abona a nuestra conclusión el hecho de que el comprador no era un perito y que por razón de su ocupación —guardalmacén de una compañía naviera— se presume que no debía facilmente conocer el vicio apuntado.

■ *Díaz* v. *Grissom International, Inc.*, la sentencia del Tribunal Superior en que pretende apoyarse el juez a quo, que nos negamos a revisar mediante resolución dictada en 6 de julio de 1962 en el recurso de revisión Núm. R-62-148, es claramente distinguible. Allí se trataba de un automóvil que tenía un desperfecto en el motor que se advirtió al día siguiente a la venta y que fue corregido por la vendedora mediante la sustitución del regulador del voltaje y ciertos ajustes en el diferencial. Después de efectuada esta reparación, "el automóvil quedó en condiciones normales de funcionamiento," dice la opinión. En tales circunstancias, la acción redhibitoria era claramente improcedente, pues es claro que cuando se trata de reparaciones menores, el comprador está obligado a aceptarlas. En el caso de autos, ni aun después de doce reparaciones, el vehículo servía el uso para el cual se le destinaba. Cf. *Meyer* v. *Mack Motor Trucks, Inc.*, 141 So.2d 427 (La. 1962).

■ Arguye la demandada que en todo caso debe considerarse que no tenía mala fe al vender el automóvil con el defecto en la transmisión. Bonet Román, en *Código Civil Comentado* (ed. Aguilar, 1962), pág. 1165, señala que "Para eximir al vendedor de prestar la garantía, no sirve la buena fe, pues el art. 1485 establece su obligación, aunque ignorase los vicios o defectos ocultos de la cosa vendida." Manresa, en *Comentarios al Código Civil Español* (5a. ed. 1950), tomo X, pág. 254, expresa que "En cuanto a la ignorancia que el vendedor tenga de los vicios o defectos ocultos, como con la responsabilidad que la ley impone no se procura castigar la mala fe, sino simplemente subsanar en lo posible el error con que contrató el comprador, es indudable que no puede producir efecto alguno, y mucho menos el de librarle de las obligaciones a que la ley le sujeta." Sin embargo, esta ausencia de mala fe produce otros efectos jurídicos que discutiremos posteriormente.

■ Cometió error, por tanto, el Tribunal Superior, al revocar la sentencia dictada por el Tribunal de Distrito. Procedía decretar la rescisión del contrato de compraventa y en su consecuencia, ordenar la restitución de los gastos que el comprador pagó(5) así como condenar a la demandada a que se haga cargo y entrega del automóvil vendido.

■ 2—Ahora bien, ¿procede incluir en la suma a resarcir los gastos de transportación en que incurrió el demandante con motivo de no ser útil el automóvil para el uso a que se le destinaba? El Art. 1375 del Código Civil, *in fine*, dispone que sólo en el supuesto de que el vendedor conociese los vicios o defectos ocultos de la cosa vendida y no los manifiesta al comprador, es que, en caso de optarse por la rescisión, viene obligado a indemnizar los daños y perjuicios causados. La glosa de Manresa, *op. cit.*, a la pág. 256, dice: "Las palabras 'gastos que pagó el comprador' empleada en el Art. 1486 [1375 P.R.] pueden, en efecto, entenderse que no se limitan a los gastos del contrato, sino a ellos y a cuantos gastos se le ocasionaron por los vicios o defectos de la cosa que se le vendió. Pero como estos últimos merecen realmente la consideración de daños, parece más acertado comprenderlos en el segundo párrafo del artículo, y considerarlos sólo en el caso que medie mala fe, o por lo menos culpa o negligencia con arreglo al art. 1902."

■ Las determinaciones de hecho del tribunal de distrito guardan silencio sobre este aspecto de la existencia o no de mala fe, que depende fundamentalmente de su conocimiento del defecto con anterioridad a la venta. En verdad la prueba ofrecida no tendió a establecer este hecho, y sólo a través de un esforzado proceso de inferencias podríamos concluir de los

---

(5) La sentencia se contraerá a condenar a la demandada a restituir al demandante la suma de $1,715.00, valor del automóvil entregado, e intereses legales desde el 21 de agosto de 1961, así como el importe de los plazos satisfechos por el vendedor a la compañía de financiamiento y sus intereses legales desde la fecha en que se verificó el pago de cada uno de los plazos.

escasos elementos que aparecen de la relación del caso, que la demandada obró de mala fe, o con culpa o negligencia. Como esto no se presume, la absolveremos de la obligación de indemnizar. Se eliminará la partida de gastos de transportación.

*Se revocará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 27 de agosto de 1963, y se devolverá el caso a dicho Tribunal para que proceda a dictar sentencia declarando con lugar la demanda y en su consecuencia condenando a la parte demandada a satisfacer al demandante la suma de $1,715.00 e intereses legales desde el 21 de agosto de 1961, así como el importe de los plazos satisfechos por el demandante conforme al contrato de venta condicional, e intereses legales desde la fecha en que se verificó el pago de cada uno de los plazos, con imposición de costas, y la suma de $200 para honorarios de abogado.*

