González Rivera, Juez Ponente
*905 TEXTO COMPLETO DE LA RESOLUCION
La señora Judith Guzmán Santiago presentó una querella ante el Departamento de Asuntos del Consumidor (D.A.C.O.) contra las partes recurrentes, Abreu Power Cars, Inc. (Abreu) y Chrysler International Services, (CISSA) por los alegados vicios ocultos de un automóvil marca Chrysler, modelo Caravan de 1996, adquirido por ella en Abreu y garantizado por CISSA.
Mediante resolución emitida el 22 de abril de 1998 el D.A.C.O. declaró con lugar la querella, decretó la rescisión del contrato de compraventa del vehículo y ordenó la devolución de las sumas de dinero pagadas por el automóvil. Las recurrentes presentaron mociones de reconsideración ante la agencia las cuales fueron declaradas sin lugar en su resolución del 14 de julio de 1998.
Abreu y CISSA recurrieron ante este Tribunal mediante recursos separados de revisión. El 6 de agosto de 1998 este Tribunal ordenó la consolidación de los casos y concedimos término a la parte recurrida, Sra. Guzmán Santiago, para oponerse a la exposición narrativa presentada por Abreu y CISSA y para presentar su alegato.
La señora Guzmán Santiago no ha comparecido según le fuera solicitado; no obstante, damos por sometido el caso por lo que procedemos a resolver según corresponda en derecho, a base de la totalidad de la prueba.
I
Según se desprende de los recursos, el 29 de julio de 1996 la señora Guzmán Santiago compró un vehículo Chrysler Caravan modelo del año 1996 a la recurrente Abreu. El precio de compraventa fue de $24,495.00 dólares. Ella dio un pronto de $5,700.00 dólares y financió la diferencia a través de Citicorp Finance P.R. a razón de $550.00 por el primer pago y $427.56 por los restantes 71 pagos.
Conforme a los términos del contrato el automóvil tenía una garantía de dos años o 24,000 millas lo que ocurriera primero. Abreu es el representante en Puerto Rico del fabricante Chrysler y, por ende, viene obligada a honrar la referida garantía.
El 4 de diciembre de 1996 la señora Guzmán Santiago presentó una querella ante el D.A.C.O.. Alegó que el vehículo tenía varios defectos, entre ellos: problemas con el piñón y cremallera "rack and pinion”, la puerta corrediza se quedaba abierta, se apagaba el auto mientras estaba en movimiento, "tiraba hacia la izquierda", tenía filtraciones de agua, consumía gasolina en forma excesiva, el guía estaba muy recio, los movimientos del vehículo no eran serenos, hacía ruidos continuos debajo del auto y al ponerlo en reversa tendía a apagarse.
Según se desprende de los autos, la señora Guzmán Santiago comenzó a reportar desperfectos en el auto después de tres meses de comprado. Se le ha prestado servicios de distinta índole en exceso de 40 ocasiones. En éstas se le cambió piezas a la unidad tales como computadoras, transmisión, espejos retrovisores, bocinas, alineamiento, reemplazo de la barra estabilizadora, los limpiaparabrisas. el vaporizador del acondicionador de aire, switch de la ignición, gomas defectuosas, "idle aire control", ya que la unidad no arrancaba cuando se oprimía el acelerador, se le cambió también el "clutch", las bandas y otros. Abreu y CISSA insisten en reparar la unidad.
El 26 de febrero de 1997 se realizó la primera inspección de la unidad por un técnico del D.A.C.O.. Para ese entonces la unidad tenía 6,340 millas corridas. El informe suscrito por el señor Luis *906 Abrahante reflejó que el auto estaba desalineado, la puerta tracera derecha producía un chirrido.
Se encontró un sinnúmero de cables rozando con la palanca del "overdrive". En esa ocasión las partes querelladas expresaron estar dispuestas a corregir los defectos encontrados. Le instalarían una computadora copiloto para que la querellante pudiera utilizar el auto y de esta forma se pudieran registrar los fallos que la unidad pudiera confrontar.
El 18 de marzo de 1997 la señora Guzmán Santiago enmendó su querella para incluir los problemas que habían surgido posteriores a la inspección y además reiterar su queja de que los problemas que motivaron su querella continuaron.
El 7 de abril de 1998 se realizó la segunda inspección por el técnico del D.A.C.O. Para ese entonces la unidad tenía 7,374 millas corridas. El inspector encontró que la unidad tenía filtraciones de aceite de transmisión la cual salía por la tapa del "crank". Un supervisor del taller de la querellada expresó que aunque las filtraciones de agua no se detectaron en esta inspección en una ocasión anterior sí se percató de la acumulación de agua dentro de la unidad. La parte recurrente expresó nuevamente estar dispuesta a corregir los defectos encontrados.
El 30 de junio de 1997 la señora Guzmán Santiago enmendó nuevamente su querella para incluir los nuevos defectos que le surgieron a la unidad. Estos incluían que el"power lock” de la puerta corrediza no funcionaba, los limpiaparabrisas y la alarma se activaban solos.
La tercera inspección del técnico del D.A.C.O. se realizó el 16 de julio de 1997 cuando la unidad tenía 10,492 millas corridas. El técnico certificó que los problemas del "rack and pinion", del guía, el ruido debajo del auto, la transmisión, los frecuentes apagues y problemas de alineamiento del tren delantero habían sido corregidos.
En cuanto a la falta de movimiento sereno en la ejecución del vehículo, problemas del "power lock", los limpiaparabrisas y los desperfectos de la alarma las partes recurrentes nuevamente ofrecieron reparar estos defectos.
El auto visitó el taller por última vez el 14 de octubre de 1997. Durante la vista administrativa celebrada, la Sra. Guzmán Santiago y su esposo, declararon que las quejas sobre el auto persisten. Abreu ha intentado reparar los defectos del auto pero luego los mismos vuelven a resurgir.
El 22 de abril de 1998 D.A.C.O. declaró con lugar la querella de la señora Guzmán Santiago, concluyó que a base de la prueba presentada no se necesita gran esfuerzo para percatarse y concluir ante el cuadro de hechos que presenta el vehículo objeto de esta querella que los vicios ocultos que tiene el mismo lo hacen poco menor que inservible... En este caso no se trata de reparaciones menores que el comprador está obligado a aceptarlas. En éste son tantos los defectos importantes, tales como la computadora, transmisión, auto tira a la derecha, auto se apaga corriendo, que la acción redhibitoria entra cómodamente.
En mérito de la anterior conclusión y en virtud de las facultades que le confiere la Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Núm. 5 del 23 de abril de 1973, decretó la resolución del contrato de compraventa al amparo de los artículos 1373 y 1374 del Código Civil, 31 L.P.R.A. 3842-3843 respectivamente. Ordenó a las recurrentes Abreu y CISSA devolver solidariamente a la señora Guzmán Santiago, todo el dinero pagado como consecuencia de la compra del vehículo en controversia, el pago de intereses, además que se relevara a la señora Guzmán Santiago del Contrato del Financiamiento. Una vez las querelladas cumplieran con lo ordenado, la señora Guzmán Santiago devolvería el auto.
En su recurso Abreu y CISSA plantean en esencia que la resolución del D.A.C.O. no está basada en evidencia sustancial que obra en el expediente administrativo.
n
El Artículo 1373 del Código Civil de Puerto Rico, 31 L.P.R.A. 3841, establece la responsabilidad del vendedor por saneamiento o defectos ocultos. El Tribunal Supremo de Puerto Rico ha resuelto que *907 esta responsabilidad es imputable a los vendedores de vehículos de motor. Véase Ferrer v. General Motors Corp., 100 D.P.R. 246 (1971).
El derecho al saneamiento le presenta al comprador dos vertientes. En primer lugar, puede ejercitar la acción redhíbitoria para la rescisión del contrato y devolución recíproca de las prestaciones objeto del contrato y además la indemnización por los daños si el vendedor conocía del vicio. También puede ejercitar la acción estimatoria o cuanti minoris para obtener compensación por la disminución de valor que el defecto ocasiona en la cosa. 31 L.P.R.A. 3843; Márquez v. Torres Campos, 111 D.P.R. 854 (1982). La opción entre ambas acciones corresponde al comprador. D.A.C.O. v. Marcelino Mercury Inc., supra.
El primer paso en este tipo de acción consiste en determinar si el vicio o defecto es de tal naturaleza que de base a la acción redhíbitoria o cuanti minoris. Se trata esencialmente de una determinación de hechos que de ordinario debe ser respetada, si encuentra apoyo en la prueba. García Viera v. Ciudad Chevrolet Inc., 110 D.P.R. 158 (1980).
Para que puedan ser objeto de saneamiento los vicios ocultos: 1) No deben ser conocidos por el adquirente, 2) el defecto debe ser grave o suficientemente importante para hacer la cosa impropia para el uso a que se le destina o que disminuya de tal modo este uso que de haberlo conocido el comprador, no la habría comprado o habría dado menos precio por ella, 3) que sea preexistente a la venta y 4) que se ejercite la acción en el plazo legal que es el de seis meses contados desde la entrega de la cosa vendida. Ferrer v. General Motors Co., 100 D.P.R. 246 (1971). No constituyen vicios redhibitorios aquellas imperfecciones menores susceptibles de ser reparadas aunque la existencia de este tipo de defecto menor puede dar base a exigir que el mismo sea reparado. Véase García Viera, supra; Berríos v. Courtesy Motors of Puerto Rico Inc., 91 D.P.R. 441 (1964). El peso de la prueba corresponde al comprador para establecer que el automóvil que compró no funcionaba en forma normal y que el vendedor tuvo la oportunidad de corregir los defectos y no pudo o no los corrigió. Ford Motors Company v. Benet, 106 D.P.R. 232 (1977); Ferrer v. General Motors Co., supra.
III
En la situación que plantea el caso de autos D.A.C.O., concluyó que el vehículo objeto de controversia adolece de vicios ocultos importantes los cuales no pudieron ser corregidos a pesar del sinnúmero de veces que la señora Guzmán Santiago lo llevó para el servicio de garantía sin que se pusiera a la unidad en condiciones de uso. Se le reparaba el defecto pero surgía nuevamente.
Según D.A.C.O. los desperfectos de que adolece la unidad son tan fundamentales que no se requiere gran esfuerzo mental para concluir que los defectos de que adolece lo hacen prácticamente inútil y constituyen vicios que dan lugar a la rescisión.
Las decisiones de los organismos administrativos merecen gran deferencia y respeto por los tribunales. Rubín Ramírez v. Trías Monge, 111 D.P.R. 481 (1981); Román v. Superintendente de la Policía, 93 D.P.R. 685 (1966). Los tribunales apelativos no habrán de intervenir con la determinación de una agencia salvo que ésta hubiese actuado arbitraria o ilegalmente o en forma tan irrazonable que su actuación hubiese constituido un claro abuso de discreción. Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692 (1975).
Las determinaciones de hecho realizadas por D.A.C.O. gozan de una presunción de regularidad y corrección. La Facultad Para las Ciencias Sociales Aplicadas Inc. v. Consejo de Educación._ D.P.R._(1993), 93 J.T.S. 88, resuelto. Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194 (1987). Las mismas no serán alteradas salvo que se establezca que no están sostenidas por evidencia sustancial en el récord de la agencia, correspondiendo el peso para lo anterior a la parte que pretende su impugnación. 3 L.P.R.A. 2175; Metropolitana S.E. v. A.R.P.E., _ D.P.R. _ (1995) 95 J.T.S. 39, resuelto. Hilton Hotels v. Junta de Salario Mínimo, 74 D.P.R. 670 (1953).
En el presente caso, entendemos que la determinación del D.A.C.O. de que el automóvil adquirido por la señora Guzmán Santiago adolecía de vicios y defectos que disminuían su valor y que lo hacían inservible para los fines que fue destinado, está suficientemente apoyada en el récord. No existe controversias, en efecto, sobre la existencia de los distintos vicios, los cuales fueron observados en *908 más de una ocasión por el perito de la agencia. La contención de los recurrentes es de que los defectos en cuestión no hacen el auto inservible para los fines que fue adquirido. La conclusión del D.A.C.O. es que los defectos no fueron reparados, no obstante, haber tenido Abreu y CISSA la oportunidad para corregirlos.
No estamos en posición de sustituir el criterio de la agencia sobre este particular. Por lo que se deniega la expedición del auto solicitado.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General