# 99 DTA 108

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL III DE ARECIBO/UTUADO
## PANEL I

ELBA PIÑEIRO LOPEZ
Recurrida

v.

MITSUBISHI MOTOR SALES OF CARIBBEAN, INC.; TAINO DEL NORTE, INC.
Recurrentes

Núms. KLRA-99-00003/KLRA-99-00005

San Juan, Puerto Rico, a 16 de marzo de 1999

Panel integrado por su Presidenta, la Juez Pesante Martínez,
el Juez Martínez Torres y el Juez Salas Soler

Pesante Martínez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Las solicitudes de revisión de epígrafe fueron presentadas el 4 y 5 de enero de 1999 por los recurrentes Mitsubishi Motor Sales of Caribbean, Inc. *("Mitsubishi Motors")* y Taíno del Norte, Inc. *("Taíno")* respectivamente. Ambas alegaron error en la *"Resolución"* emitida por el Departamento de Asuntos del Consumidor *("DACO"),* Oficina Regional de Arecibo, del 3 de diciembre de 1998, en la que se ordenó la resolución del contrato de compraventa sobre un vehículo de motor, adquirido por la querellante-recurrida, Elba Piñeiro López, imponiendo a los recurrentes satisfacer solidariamente el reembolso del precio de venta, más el interés acumulado. Modificamos la resolución recurrida.

### I

El 28 de febrero de 1997, la recurrida, Sra. Piñeiro López, adquirió un vehículo de motor marca Mitsubishi, modelo Mirage de 1997, por valor de $13,200.00, cantidad satisfecha mediante financiamiento con la Asociación de Empleados del ELA. ■

Cinco meses más tarde, el 4 de agosto de 1997, la recurrida se querelló ante DACO por alegados *"defectos de fábrica y/o mecánicos"* que impedían el pleno uso y disfrute de la unidad adquirida. ■ Defectos que habían requerido la intervención del taller de reparaciones de Taíno, hoy Costa del Norte (distribuidor para el área de Arecibo de Mitsubishi Motors (corporación que honra la garantía del manufacturero), en seis (6) ocasiones distintas, antes de formalizar la querella relacionada al caso de autos. ■

El 10 de noviembre de 1997, el Sr. Edgar Cotto González, técnico automotriz del DACO, celebró una inspección de la unidad, emitiendo el correspondiente informe, en el que se hizo constar la disposición de los querellantes para reparar el vehículo en cuestión, pese a la negativa de la querellada para aceptar el ofrecimiento, al entender que el vehículo continuaba con garantía de fábrica. ■Posteriormente, el 17 de marzo de 1998, las partes suscribieron un *"Contrato de Transacción y Resolución"* en el que Mitsubishi Motors se comprometía a reparar el motor y la transmisión del vehículo, en tanto que Taíno supliría la transportación alterna necesaria de la querellante durante el término de la reparación. ■

El 16 de julio de 1998, el técnico automotriz de DACO realizó una re-inspección del vehículo. El Sr. Cotto González hizo constar en su informe que el vehículo todavía reflejaba ruidos en el motor, por lo que ordenó nuevamente la reparación de la unidad. ■

Así las cosas, el 10 de noviembre de 1998, se celebró la vista administrativa del caso de epígrafe dejándose sin efecto el acuerdo transaccional suscrito por las partes, *supra.* El foro administrativo concluyó que, conforme al derecho, reglamentación y justicia aplicables, correspondía decretar la resolución del contrato de compraventa del vehículo de motor, ordenando solidariamente a los recurrentes el pago o reembolso de los $13,200.00 satisfechos por la recurrida, más el interés legal acumulado sobre dicha suma, a partir de la fecha de la radicación de la querella (4 de agosto de 1997). La recurrida debía devolver a los recurrentes el vehículo en cuestión, luego de recibir el pago antes indicado. ■

## II

El primer señalamiento de error presenta la inconformidad de los recurrentes ante la orden de DACO para resolver el contrato de compraventa de la unidad, adquirido por la recurrida. Entienden y exponen que, dado los hechos del caso, no se justificaba la medida impuesta; (a) porque *"la querellante le ha dado gran uso al vehículo haciéndolo propio para el uso que se le destinó y no ha mermado notablemente su valor",* ■ (b) porque *"el problema en controversia es de naturaleza tan menor que no impide el uso y/o no afecta de forma alguna el funcionamiento de la unidad".* ■

El Art. 1373 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3841, establece la responsabilidad del saneamiento por vicios o defectos ocultos. Por su parte el Tribunal Supremo de Puerto Rico ha reiterado que esta responsabilidad es imputable a los vendedores de vehículos de motor. *Ferrer v. General Motors Corp.,* 100 D.P.R. 246, 254 (1971). ■

Para que puedan ser objeto de saneamiento, los vicios ocultos: (1) no deben ser conocidos por el que adquiere, (2) el defecto debe ser grave o suficientemente importante para hacer la cosa impropia para el uso a que se le destina o que disminuya de tal modo este uso que, de haberlo conocido el comprador, no la habría comprado o habría dado menos precio por ella, (3) que sea preexistente a la venta y (4) que se ejercite la acción en el plazo legal, que es el de seis (6) meses contados desde la entrega de la cosa vendida. *Ferrer v. General Motors Corp., supra,* a las págs. 255-256. Todos, requisitos presentes en el caso ante nuestra consideración.

Conforme a ello, debemos determinar si el vicio o defecto es de naturaleza tal que justifica la acción redhibitoria. *D.A.C.O. v. Marcelino Mercury, Inc.,* 105 D.P.R. 80, 83-84 (1976). Se trata esencialmente de una determinación (administrativa) de hecho que de ordinario debe ser respetada, si encuentra apoyo en la prueba. *García Viera v. Ciudad Chevrolet, Inc.,* 110 D.P.R. 158, 162 (1980); *D.A.C.O. v. Marcelino Mercury, Inc., supra,* a las págs. 84-85.

No constituyen vicios redhibitorios aquellas imperfecciones menores susceptibles de ser reparadas, aunque la existencia de este tipo de defecto menor puede dar base a exigir que el mismo sea reparado. *García Viera v. Ciudad Chevrolet, Inc., supra,* a las págs. 162-163; *Berríos v. Courtesy Motors of P.R.,* 91 D.P.R. 441, 447 (1964). El peso de la prueba corresponde al comprador para establecer que el automóvil que compró no funcionaba en forma normal y que el vendedor tuvo la oportunidad de corregir los defectos y no pudo o no los corrigió. *Ford Motor Co. v. Benet,* 106 D.P.R. 232, 238 (1977); *Ferrer v. General Motors Corp., supra,* a la pág. 253.

En autos, no existe controversia sobre la existencia de distintos vicios, entre los cuales estuvo presente el desperfecto del motor. Las partes así lo confirman mediante sus respectivos escritos. Tampoco hay controversia respecto al hecho de que los desperfectos reclamados por la recurrida existían y eran objeto de reparación (por la falta de un funcionamiento normal o adecuado), toda vez que los recurrentes admitieron la unidad en su taller e intervinieron con el mismo para efectuar las reparaciones de los desperfectos alegados.

Por su parte, DACO determinó que los defectos no fueron reparados, no obstante haber tenido los recurrentes suficiente oportunidad para corregirlos. La agencia podía razonablemente llegar a dicha determinación, según surge del récord ante este foro: ■

*"a) Las órdenes de servicio (O.S.) reflejan que desde el 13 de marzo de 1997 el vehículo era objeto de reparación: O.S. #254651, #214164 (problemas con el radio y las bocinas); O.S. #228328 (problemas con el radio); O.S. #225857 (problemas con la transmisión); O.S. #225881 (problemas con los frenos); O.S. #243670 (problemas con el motor, transmisión, radio, ruido de la puerta, etc...); O.S. #264852 (problemas con el motor, transmisión, ruidos al aplicar los cambios, etc...); O.S. #303782 (problemas con el motor, transmisión, radio,*

*panel de la puerta derecha, etc...) y; O.S. #306878 (problemas con el motor, transmisión, panel de la puerta derecha, etc...).*

*b) Convenio de transacción celebrado por las partes el 17 de marzo de 1998, donde las recurrentes se obligaron a reparar el motor y la transmisión de la unidad.*

*c) Oportunidad de la Agencia (DACO) del 6 de octubre de 1998 para conceder un término adicional a favor de las recurrentes, con el propósito de 'extinguir' los motivos de la controversia.*

*d) Recomendaciones del Técnico Automotriz del Departamento del 16 de julio de 1998, sugiriendo someter el vehículo a una nueva reparación.*

*e) Incumplimiento de las recurrentes para reparar los defectos señalados, supra, el 10 de noviembre de 1998."*

Es del todo incontrovertible que existen, cuando menos, cuatro ocasiones distintas en las que la recurrida requirió a los recurrentes le arreglaran el problema del motor y que, correspondiendo a la petición, los recurrentes intervinieron con la unidad de referencia. Tampoco tenemos la menor duda de que el defecto del motor era de total conocimiento para los recurrentes. 

No estamos en posición de substituir el criterio de la agencia sobre este particular, en tanto que el mismo está sostenido por la evidencia sustancial en el récord.

Las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto. Su revisión judicial se limita a determinar si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que su actuación constituyó un abuso de su discreción. *Fuentes v. A.R.P.E.,* __ D.P.R. __ (1993), **93 J.T.S. 165,** opinión de 17 de diciembre de 1993, a la pág. 11,385; *Del Rey v. J.A.C.L.,* 107 D.P.R. 348, 355 (1978); *Murphy Bernabé v. Tribunal Superior, supra.* Por el contrario, si las interpretaciones de la agencia especializada son razonables y consistentes con el propósito legislativo que inspiran los estatutos directivos, el tribunal debe abstenerse de intervenir con las mismas. *Comisionado de Seguros de P.R. v. General Accident Insurance Co.,* __ D.P.R.__ (1993), **93 J.T.S. 10,** opinión de 28 de enero de 1993, a la pág. 10,334; *Colón Ventura v. Méndez,* __ D.P.R. __ (1992), **92 J.T.S. 51,** opinión de 5 de mayo de 1992, a la pág. 9,454; *Vázquez v. A.R.P.E.,* __ D.P.R.__ (1991), **91 J.T.S. 53,** opinión de 13 de junio de 1991, a la pág. 8,657.

Dadas las circunstancias del presente caso, el defecto objeto de la resolución del contrato (problemas con el motor) no puede ser considerado como uno de naturaleza menor.

Según concluyera la agencia, el defecto no fue reparado, a pesar del tiempo y oportunidades concedidos a los recurrentes, más que razonables, para resolverlo. Ello nos lleva a concluir que el vicio es del tipo que ordinariamente justifica la resolución del contrato (defecto de naturaleza mayor). En ausencia de reparación, continúa el riesgo e incertidumbre de que en un futuro, y como consecuencia de la existencia del problema reportado, se pueda dañar el motor (pasado el término de cubierta de cualquier garantía en favor de la recurrida). Compárese, *Berríos v. Courtesy Motors of P.R., Inc., supra,* a la pág 246, *"[e]l eficiente y buen funcionamiento del cambio de velocidades en un vehículo es tan fundamental que no se requiere elaboración para sostener que un defecto de que adolezca o haga prácticamente inútil constituye un vicio que da lugar a la rescisión".*

Tratándose de un vicio propiamente redhibitorio, la recurrida tenía la opción de solicitar la rescisión del contrato o la disminución en el precio. 31 L.P.R.A. sec. 3843; *D.A.C.O. v. Marcelino Mercury, Inc., supra,* a la

pág. 85. El remedio concedido (la resolución del contrato), de este modo, resulta procedente en derecho. La partes vinieron obligadas a la devolución de las aportaciones ofrecidas. 31 L.P.R.A. sec. 3496. Por lo que el error alegado no fue cometido.

Los recurrentes plantean, además, error en la apreciación de la prueba toda vez que la determinación sobre la resolución del contrato no estaba apoyada en la evidencia del caso. Indican que, según la evidencia presentada, quedó demostrado que *"los co-querellados... cambiaron el bloque de motor por uno nuevo, pero que por un error involuntario no se reemplazó la tapa del bloque."* Dicho argumento no nos convence. La naturaleza del defecto reportado por la recurrida, *supra*, en adición de la experiencia de los recurrentes, debió traducirse en la total reparación o sustitución del motor defectuoso, en lugar de pretender excusarse (dada la persistencia en el ruido del motor de la unidad) alegando que involuntariamente la trabajaron, en lugar de sustituirla.

Con razón señaló el foro administrativo:

*"Este caso se distingue por la tolerancia y paciencia que tuvo la querellante al aceptar y consentir varias reparaciones mayores en su automóvil. Las partes coquerelladas no pudieron corregir los defectos mecánicos del vehículo satisfactoriamente a juicio del perito [de la agencia]. La querellante cumplió su obligación de dar la oportunidad razonable para corregir los defectos. La razonabilidad tiene su límite al cual la querellante legalmente llegó, agotando todos los remedios de inteligencia."*

Por cuanto el propio perito de la agencia declaró que los defectos eran reparables, la agencia recurrida concedió en repetidas ocasiones la oportunidad a los recurrentes para reparar la unidad defectuosa. Según señaláramos anteriormente, los intentos para corregir el defecto en el motor fueron infructuosos y la unidad adquirida permaneció reflejando irregularidad. Entendemos que las oportunidades ofrecidas a los recurrentes, por la agencia, constituyó oportunidad más que razonable para corregir el desperfecto del motor, máxime cuando los propios recurrentes alegan que era de fácil reparación. La incapacidad de éstos, para eliminar *"el ruido"* reportado es lo que justamente llevó al foro administrativo, y a este Tribunal, a la consideración de que el mismo constituye un defecto grave que, si bien no imposibilitó del todo el uso y disfrute de la unidad, interrumpió el servicio y uso regular que como nueva unidad y de reciente adquisición debe ofrecer.

La contención de los recurrentes es a los efectos de que la recurrida estuvo utilizando la unidad defectuosa por espacio de 20 meses y con millaje recorrido en exceso de las 26,000 millas (6,000 millas por encima del millaje recomendado por fabricantes de automóviles). Que bajo tales circunstancias, quedó demostrado que las imperfecciones objeto de las diversas reclamaciones no impedían el uso del vehículo de motor y que *"el defecto que persist[ía] e[ra] uno de fácil reparación".* Para fines de discusión, aceptando la posición de los recurrentes, no vemos como pueda coincidir el hecho de su reclamo -respecto a la facilidad para reparar el desperfecto señalado- con el hecho contundente de la reaparición y falta de reparación *"del ruido del motor".* Entendemos, sencillamente, que tal reclamo es inaceptable, pues no constituye un error excusable.

No estamos en posición de sustituir el criterio de la agencia sobre el particular. Las determinaciones de la agencia están basadas en la evidencia sustancial que obra en el expediente administrativo. 3 L.P.R.A. sec. 2175. Véase además, *Rivera Rentas v. A & C Development Corp.*, __ D.P.R.__ (1997), **97 J.T.S. 143,** opinión de 26 de noviembre de 1997, a la pág. 344; *Associated Insurance Agencies, Inc. v. Comisionados de Seguros de P.R.*, __ D. P.R. __ (1997), **97 J.T.S. 142,** opinión de 26 de noviembre de 1997, a la pág. 332; *Asociación de Doctores en Medicina al Cuidado de la Salud Visual v. Colegio de Optómetras de P.R.*, __ D.P.R.__ (1993), **93 J.T.S. 12,** opinión de de febrero de 1993, a la pág. 10,349; *P.R.T.C. v. Unión Independiente de Empleados Telefónicos*, __ D. P.R. __ (1992), **92 J.T.S. 93,** opinión de 30 de junio de 1992, a la pág. 9,710.

Las determinaciones del foro administrativo no serán alteradas salvo que pueda establecerse que no están sostenidas por evidencia sustancial en el récord de la agencia; corresponde a la parte que pretende su impugnación así demostrarlo. Véanse, *Metropolitana S.E. v. A.R.P.E.*, __ D.P.R. __ (1995), **95 J.T.S. 39**, opinión de 10 de abril de 1995, a la pág. 767 y *Hilton Hotels v. Junta Salario Mínimo*, 74 D.P.R. 670, 686 (1953); 3 L.P.R.A. sec. 2175. Según indicado en *Henríquez v. Consejo Educación Superior*, 120 D.P.R.194, 210 (1987):

*"[L]os procedimientos y las decisiones ante un organismo administrativo tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que la impugne no produzca suficiente evidencia para derrotarla."*

Los recurrentes fallaron en el intento de derrotarla.

Plantean, además, que erró el foro recurrido toda vez que omitió considerar el crédito a su favor en consideración a la depreciación y/o el uso dado al vehículo objeto de la reclamación. Señalan que debió considerarse la prueba aportada sobre el uso de la unidad --millaje sobre el promedio recomendado-- así como el accidente sufrido por ésta durante el período en el que la recurrida lo tuvo en su posesión y, por ende, acreditarle la correspondiente disminución del valor del vehículo.

Como norma general, en los casos sobre resolución de un contrato, *"el comprador responderá del deterioro causado por el uso normal de la cosa, ya que ésta experimenta, o puede experimentar, una reducción de su valor, pero no responderá de los deterioros producidos por un caso fortuito"*. Revista de Derecho Privado, *Comentarios al Código Civil y Compilaciones Forales*, Tomo XIX, EDERSA, 1991, a la pág. 377.

Dadas las circunstancias particulares del caso que nos ocupa, debemos apartarnos de la norma general. Entendemos adecuado imponer a los recurrentes soportar la carga sobre la depreciación del vehículo toda vez que fueron ellos mismos los que no quisieron reconocer el derecho que le asistía a la recurrida e incurrieron en el incumplimiento de una obligación contraída (contrato de transacción entre las partes). Al imponer dicha carga, resulta determinante la *"apreciación subjetiva"* que, sobre el particular, hizo la agencia. ■■■

En Puerto Rico, las decisiones de los organismos administrativos merecen gran deferencia y respeto por los tribunales. *Rubín Ramírez v. Trías Monge*, 111 D.P.R. 481, 484-485 (1981) y *Román v. Superintendente de la Policía*, 93 D.P.R. 685, 690 (1966). En adición, las determinaciones de hecho realizadas por éstos (como foros administrativos) gozan de una presunción de regularidad y corrección. *La Facultad para las Ciencias Sociales Aplicadas, Inc. v. Consejo de Educación Superior*, 120 D.P.R. 194, 210 (1987). Por ello, los tribunales apelativos no habrán de intervenir con la determinación de una agencia salvo que ésta hubiese actuado arbitraria o ilegalmente o en forma tan irrazonable que su actuación hubiese constituido un claro abuso de discreción. *Murphy Bernabe v. Tribunal Superior*, 103 D.P.R. 692, 699 (1975).

Los factores alegados, que disminuyeron el valor de la unidad reportada, son imputables a los recurrentes, habida cuenta de su intransigencia en reconocer su inhabilidad para resolver expedita y eficientemente los problemas que ésta confrontaba. Razones por las que, en el caso de autos, no procede deducir de la compensación ordenada por la agencia el valor de la depreciación sufrida por el vehículo.

Los recurrentes indican, además, que el foro administrativo no debía imponerle la carga de satisfacer el pago de los intereses acumulados por la venta del vehículo objeto de la reclamación, toda vez que ninguno de ellos financió, obtuvo u obtendrá beneficio alguno por concepto del financiamiento de la compraventa.

Según surge del recurso, el pago mensual satisfecho por la recurrida incluye una partida que corresponde al financiamiento de la compraventa del vehículo. Dicho de otro modo, el reclamo por los $13,200.00 incluye el costo de la unidad defectuosa más el costo del financiamiento seleccionado por la apelada. Coincidimos con los recurrentes en el hecho de que la obligación del financiamiento, contraída por y en beneficio exclusivo de la recurrida, debe ser deducido del pago que éstos deberán satisfacer a la recurrida. ▆ Resolver de otro modo constituiría una sanción o carga adicional para los recurrentes y el correlativo enriquecimiento injusto de la recurrida.

En el recurso objeto de revisión también se señala que el foro administrativo erró al ordenar el pago del precio satisfecho, con el interés legal acumulado *"a partir de la fecha de radicación de la querella"* ▆ Les asiste la razón a los recurrentes, aunque no en su beneficio.

La Regla 34, de las Reglas de Procedimiento de Querellas ante el DACO, aprobadas el 23 de agosto de 1989, dispone en lo pertinente que *"[c]uando se decrete la resolución de un contrato y se ordene la devolución del precio pagado por el querellante se impondrán intereses al tipo legal sobre dicha cuantía desde la fecha en que el querellante pagó el precio"*. [Enfasis nuestro]

Por los fundamentos antes expuestos, se modifica la resolución recurrida a los sólos fines de reducir la cuantía a ser devuelta a la recurrida en aquella suma equivalente a los intereses por financiamiento no vencidos a la fecha de la resolución del contrato; la cantidad a ser devuelta acumulará el interés legal devengado desde la fecha en que la recurrida pagó el precio de la unidad a los recurrentes. Corresponderá al foro administrativo, luego de los trámites pertinentes, determinar el monto de dicha cuantía.

Lo pronunció y manda el Tribunal y lo certifica la Señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 99 DTA 108

**1.** El precio de compraventa señalado incluia los cargos en concepto de intereses por financiamiento. *"Revisión Judicial Administrativa"*, a la pág. 2.

**2.** Entre los desperfectos reclamados se encontraban:

*"(a) problemas con el tocacintas del radio del vehículo;*

*(b) problemas en la transmisión;*

*(c) problemas con el motor, por ruido excesivo;*

*(d) problemas con la pintura del vehículo, en el área del bonete;*

*(e) el vehículo se quedaba acelerado;*

*(f) filtrado de agua al interior del vehículo (aparentemente por las puertas);*

*(g) un "azote" que se registraba al encender el aire acondicionado del vehículo y detener la marcha del mismo.*

**3.** Revisión Judicial de Resolución Administrativa, Querella, a la pág. 9 del apéndice.

**4.** *Ibid.*, Inspección, a la pág. 11 del apéndice.

**5.** *Ibid.*, Contrato de Transacción y Resolución, a la pág. 14 del apéndice. (Aparentemente el tocacintas del radio y el panel de la puerta interior del vehículo habían sido previamente corregidos.)

**6.** *Ibid.*, [Hoja de la Inspección, a la pág. 16 del apéndice.

**7.** *Ibid.*, Resolución, a las págs. 1-8 del apéndice.

**8.** Escrito de Revisión, a la pág. 11.

**9.** Revisión Judicial de Resolución Administrativa, a la pág. 9.

**10.** El derecho al saneamiento le presenta al comprador dos vertientes. Bien puede ejercitar la acción redhibitoria para la rescisión del contrato y la devolución recíproca de las prestaciones objeto del contrato, además, la indemnización por los daños si el vendedor conocía del vicio. O bien, puede ejercitar la acción estimatoria o *quanti minoris* para obtener compensación por la disminución de valor que el defecto ocasiona en la cosa. 31 L.P.R.A. sec. 3843. Véase además, *Márquez v. Torres Campos*, 111 D.P.R. 854, 862 (1982). La opción entre ambas acciones corresponde al comprador. *D.A.C. O. v. Marcelino Mercury, Inc.*, 105 D.P.R. 80, 85 (1976).

**11.** Revisión Judicial de Resolución Administrativa, Ordenes de Servicio, a las págs. 23-35 del apéndice; Resolución, a las págs. 1-2 del apéndice.

**12.** *"Se reemplazó el bloque del motor ('engine assembly' o 'short block'), pero por un error involuntario no se reemplazó la tapa del bloque de donde --según la única prueba pericial presentada en el procedimiento administrativo -- proviene el ruido del motor; el único alegado desperfecto aún pendiente de ser reparado, pero el cual no impide el uso del vehículo y es de fácil corrección."* Revisión Judicial de Resolución Administrativa, a la pág. 10.

**13.** La evidencia sustancial para sostener la actuación administrativa es aquella que una mente razonable puede aceptar como adecuada para sostener una conclusión. La intervención del Tribunal está limitada a evaluar si la decisión de la agencia es razonable y no si hizo una determianción correcta de los hechos ante su consideración. Si existe más de una interpretación razonable de los hechos, los tribunales sostendrán la decisión de la agencia y no sustituirán su criterio por el de ésta. Al revisar las determinaciones de hecho, la evidencia debe ser considerada en su totalidad. *Hilton Hotels v. Junta de Salario Mínimo*, 74 D.P.R. 670, 687 (1953).

**14.** Escrito de Revisión, a la pág. 7.

**15.** Revisión Judicial de Resolución Administrativa, a la pág. 6.

**16.** *Ibid.*, Resolución, a la pág. 5 del apéndice.

**17.** Véase, *"Contrato de Transacción y Resolución"* del 17 de marzo de 1998; Reinspección del vehículo del 16 de julio de 1998; Vistas Administrativas del 6 de octubre y 10 de noviembre de 1998.

**18.** Según surge del expediente de autos, los defectos señalados, desde los inicios impidieron a la recurrida el pleno uso y disfrute de la unidad.

**19.** Escrito de Revisión, a la pág. 11.

**20.** *Ibid.*, a la pág. 7.

**21.** *Ibid.*, a la pág. 12.

22. Resulta paradójico el argumento de los recurrentes a los efectos de imputar la merma en el valor de la unidad de referencia a la recurrida (por el uso excesivo de la misma) y, de otro modo, negar su responsabilidad de la merma en el valor del vehículo como consecuencia de la intervención mecánica de que fue objeto, en adición al remplazo total y/o parcial de piezas. Tal *"apreciación subjetiva"* de DACO nos parece acertada. Escrito de Apelación, a la pág. 8.

23. Mediante *"Resolución y Orden"* del 9 de febrero de 199[9] sic., dimos oportunidad a a recurrida para mostrar causa por la cual no debíamos modificar la resolución recurrida para descontar los intereses por financiamiento no vencidos a la fecha de la resolución del contrato. La parte recurrida no compareció, por lo que entendemos por admitido el planteamiento de los recurrentes.

24. Revisión Judicial de Resolución Administrativa, Resolución, a la pág. 6 del apéndice.